## IN THE UNITED STATES BANKRUPTCY COURT
## FOR THE WESTERN DISTRICT OF TEXAS
## AUSTIN DIVISION

| | | |
|---|---|---|
| **In re:** | § | **Chapter 11** |
| | § | |
| **WILLIAM G. WENDLANDT** | § | **Case No. 25-10657** |
| | § | |
| **120-MP VICTORIA, LTD.** | § | **Case No. 25-10658** |
| | § | |
| **LAURENT TOWER, LLC** | § | **Case No. 25-10669** |
| | § | |
| **1309 RED RIVER DEVELOPMENT** | § | |
| **COMPANY, LLC** | § | **Case No. 25-10670** |
| | § | |
| **120 SOUTH MAIN PARKING LLC** | § | **Case No. 25-10671** |
| | § | |
| | § | **Jointly Administered under Case** |
| | § | **No. 25-10657** |

### WILLIAM G. WENDLANDT'S MOTION TO APPROVE SALE OF REAL ESTATE ASSET FREE AND CLEAR OF ALL INTERESTS PURSUANT TO 11 U.S.C. § 363(b) AND (f) AND TO APPROVE BROKER FEES PURSUANT TO PREPETITION LISTING AGREEMENT

TO THE HONORABLE UNITED STATES BANKRUPTCY JUDGE;

William Wendlandt, (the "Debtor"), Debtor and Debtor-in-Possession in the above mentioned case, respectfully files this *Motion To Approve Sale of Real Estate Asset Free and Clear of all Interests Pursuant to 11 U.S.C. § 363(b) and (f) and to Approve Broker Fees Pursuant to Prepetition Listing Agreement*, and would show the following:

### I.      Procedural History

1.      On May 5, 2025, Debtor filed a petition under Chapter 11 of the Title 11, United States Code ("Case"), 11 U.S.C. §§ 101-1330.   Debtor has continued in possession and management of its property as Debtor-in-Possession pursuant to §§ 1107 and 1108 of the Bankruptcy Code.

## II.      Jurisdiction and Venue

2.      This Court has jurisdiction to hear this motion pursuant to 28 U.S.C. §§ 157 and 1334.  This is a core proceeding pursuant to 28 U.S.C. § 157(b)(2)(A) and (N).  Venue is proper before this Court pursuant to 28 U.S.C. §§ 1408 and 1409.

## III.      Factual Background

3.      On April 12, 2025, Debtor signed a listing agreement with Urbanspace, L.L.P. ("Urbanspace"), attached as Exhibit 1.  The compensation was amended as part of the purchase agreement in an Addendum Approving Broker Compensation, attached as Exhibit 2, which provides for the buyer and seller brokers to split a 6% commission.  Douglas Harrison ("Harrison") with Urbanspace procured a buyer, and on April 17, 2025, Debtor signed a real estate contract, attached as Exhibit "3," (the "Real Estate Contract") to sell Debtor's condominium homestead located at 40 N.  IH 35, PA1 Austin, Texas, (the "Property[1]") to Angelica Guitierrez Castano ("Buyer").  Buyer is not an insider and had no prior involvement with Debtor or any of its affiliate debtors.  As shown on the affidavit of Douglas Harrison attached as Exhibit 4, Urbanspace is not an insider and had no prior involvement with Debtor or any of its affiliate debtors.

4.      The Contract provides for a purchase price of $1,850,000.  The Buyer completed her due diligence, has obtained her funding, and is ready to close on the sale.  The closing date is currently set for May 23,2025.  The sale is in danger of being lost and the buyers refusing to close if it doesn't close very soon, which could likely cause immediate and irreparable harm to the estate.  Because of interest rates and the state of the US economy, finding buyers for property of this value is very difficult.

5.      The property is currently encumbered by four debts.

---

[1] Legal Description: Unit(s) PA1, Building D, TOWERS OF TOWN LAKE CONDOMINIUMS, a condominium project in Travis County,  Texas, according to the Declaration of Condominium, recorded in Volume 12678, Page 10 of the Real Property Records of Travis County, Texas, and amendments thereto, together with an undivided interest in and to the common elements appurtenant thereto.

a.  Travis County is owed 2025 property taxes to be prorated on the closing statement;

b.  Keystone Bank, S.S.B. is owed approximately $1 million on its first lien mortgage;

c.  Towers of Town Lake Condominium is owed condominium assessments of $107,760.02; and

d.  A debt in favor of Cavitt Wendlandt, Independent Executor of the Estate of Walter Wendlandt, Deceased in the amount of $600,000, which is being released.

6.      Next, while Debtor claims the Property is exempt as his homestead, Debtor has yet to file his schedules and parties in interest have 30 days following completion of the 341 to object to Debtor's exemptions pursuant to Fed. R. Bankr. P. 4003(b)(1).  Debtor proposes to account for and hold funds in excess of closing costs until the exemption objection deadline (and resolution of any objections) passes in a separate debtor in possession account.  Notwithstanding this paragraph, Debtor requests authorization to use up to $5000 per month from the sales proceeds for his living expenses, receive $8000 to pay for the cost of moving from the 6500 square foot condo, receive reimbursement of up to $3000 for repairs needed to be completed on the Property prior to closing, and be authorized to use up to a total of $50,000 of the proceeds to pay expenses related to the affiliate debtors.  Debtor also proposes a $50,000 "carve out" for professional fees.

7.      Closing costs are projected to be approximately 6-7% including broker fees.   The distribution of sales proceeds are projected as follows (the "Closing Distributions"):[2]

---

[2] The projections are estimates and may be adjusted once the settlement statement is received from the title company.

| Cash Sales Proceeds | $1,850,000 |
|---|---|

| | |
|---|---|
| Closing Costs (Excluding Broker Fees) | $18,500 |
| Broker 6% fee. | $111,000 |
| Keystone Bank | $1,000,000 |
| Travis County Taxes (Prorate) | $28,000 |
| Towers of Town Lake Condominium | $110,992 |
| UST Quarterly Fees (Approximate) | $16,000 |
| Professional Fees Carve Out | $50,000 |
| Moving Expenses | $8000 |
| Repair Reimbursement | $3000 |

| Total Closing Distributions | $ 1,345,492 |
|---|---|

| Cash Proceeds After Distributions | $504,508 |
|---|---|

## IV.     Relief Requested

8.     Debtor requests the Court authorize sale of the Property to the Buyer free and clear of all interests and approve the broker's fees as provided for in the Addendum Approving Broker Compensation.  Further, pursuant to Bankruptcy Rules 6003 and 6004(h), the Debtor respectfully requests that the Court grant the relief requested in this Motion within twenty-one (21) days following the Petition Date, and waive the fourteen-day stay provided by Bankruptcy Rule 6004(h),

**9.**     Out of closing, Debtor requests to pay all of the Closing Distributions as those amounts are ultimately determined through the closing process.  The remaining funds will be held in a separate debtor in possession account and retained until any objections regarding Debtor's exemptions are resolved or further order of the court, except Debtor may receive $5000 per month toward his living expenses, $8000 for moving expenses, up to $3000 in reimbursement for the costs of repairing the Property prior to closing, up to $50,000 to pay expenses of the Affiliate debtors and $50,000 shall be retained for professional fees.

## V. ARGUMENT AND AUTHORITY

10.     Section 363(b)(1) of the Bankruptcy Code provides that, "the Trustee, after notice and a hearing, may use, sell, or lease, other than in the ordinary course of business, property of the estate." 11 U.S.C. § 363(b)(1).  Courts generally have applied four factors in determining whether to approve a sale pursuant to § 363 of the Bankruptcy Code:  (1) whether a valid business justification exists for the proposed transaction; (2) whether fair consideration is provided; (3) whether the transaction has been proposed in good faith; and (4) whether adequate and reasonable notice is provided.  *240 North Brand Partners, Ltd. V. Colony GFP Partners, L.P.* (*In re 240 North Brand Partners, Ltd.*), 200 B.R. 653, 659 (9th Cir. B.A.P. 1996); *United States Internal Revenue Service v. Moberg Trucking, Inc.* (*In re Moberg Trucking, Inc.*), 112 B.R. 362, 364 (9th Cir. B.A.P. 1990) (dissenting) (citing the four factors in determining whether a sale pursuant to § 363(b) should be approved).  As set forth herein, cause exists with respect to the sales encompassed within this Motion.

11.     The Debtor also proposes the sale of the Property be "free and clear" of interests to the fullest extent in accordance with section 363(f) of the Bankruptcy Code.  Section 363(b)(1) of the Bankruptcy Code provides that a trustee "after notice and a hearing, may use, sell, or lease, other than in the ordinary course of business, property of the estate."  This provision generally allows a trustee (in this case Debtor subject to court approval) to sell property of the estate outside the ordinary course of business where the proposed sale is a sound exercise of the trustee's business judgment, the sale is proposed in good faith, and is for fair value. Committee of Equity Security Holders v. Lionel Corporation (In re Lionel Corp.), 722 F.2d 1063, 1010 (2d Cir. 1983).

12.     One or more of the following must also be demonstrated in order for a sale to be free and clear of interests pursuant to section 363(f) of the Bankruptcy Code when:

        a.    applicable nonbankruptcy law permits a sale free and clear of such interest;

        b.    the holder of the interest consents;

     c.    the interest is a lien and the price at which the property is to be sold exceeds the aggregate value of all liens against it;

     d.    the interest is in bona fide dispute; or,

     e.    the holder of the interest could be compelled in a legal or equitable proceeding to accept a monetary satisfaction of such interest.

13.     The Bankruptcy Code authorizes the Debtor to sell the Property.

14.     Debtor proposes to sell the Property and consents to the sale. Other than the Debtor, the other parties holding an interest in the Real Property are creditors holding liens to secure the payment of debts. The secured creditors are being paid in full or have otherwise consented to the sale.

15.     Under these conditions, Debtor contends the sale may be approved pursuant to Section 363(f), in the best interest of the estate and its creditors, and should be approved. .

16.     Next, pursuant to Bankruptcy Rules 6003 and 6004(h), the Debtor respectfully requests that the Court grant the relief requested in this Motion within twenty-one (21) days following the Petition Date, and waive the fourteen-day stay provided by Bankruptcy Rule 6004(h), based on the following:

17.     The Debtor submits that the relief requested herein is necessary to prevent immediate and irreparable harm to the estate. Specifically, the subject property is under a time-sensitive purchase agreement, and any delay in consummating the sale may result in the loss of a ready, willing, and able purchaser. The Debtor has limited liquidity and is incurring ongoing costs associated with maintaining the property, including taxes, insurance, and utilities. The Debtor further submits that in the absence of a prompt sale, there is a substantial risk that the buyer will terminate the purchase agreement or reduce the offer price, especially given current market volatility. The loss of this sale opportunity would result in immediate and tangible financial harm to the estate, including lost sale proceeds and continued administrative costs.

18.     Accordingly, the Debtor respectfully requests that the Court enter an order approving the sale of the Property free and clear of liens, claims, interests, and encumbrances pursuant to section 363(f) of the Bankruptcy Code on an expedited basis, and that such order be effective immediately upon entry.

19.     Finally, Debtor contends the broker Urbanspace is a disinterested party and entitled to be paid its commission of 6% that is to be shared with the buyer's broker and paid as a closing cost from the sale proceeds

## VI.     NOTICE AND OBJECTIONS

20.     An element for the approval of a sale under § 363(b) of the Bankruptcy Code is the requirement that interested parties receive adequate and reasonable notice.  Debtor's attorney has caused a copy of this Motion to be served First Class United States Mail upon (1) the Debtor; (2) the Trustee, (3) the secured creditors of the Debtor; (4) the twenty largest unsecured creditors of the Debtor; (5) the United States Trustee; and (6) those persons who have formally appeared in this Case and requested service pursuant to Bankruptcy Rule 2002; (7) the estate of Walter Wendland via its counsel of record; and (8) all applicable government agencies to the extent required by the Bankruptcy Rules and the Local Rules.  The Debtor submits that no other or further notice need be provided.

21.     Only appearance at the hearing shall be required to preserve an objection to sale.

22.     WHEREFORE, the Debtor respectfully requests that the Court enter an order approving the sale in accordance with the terms and conditions set out in this Motion, approve the prepetition broker fee agreement and granting such other relief as is just and proper.

Dated:  May 15, 2025.

Respectfully Submitted,

SMEBERG LAW FIRM, PLLC

By:___/s/ Ronald J. Smeberg_____.
             RONALD J. SMEBERG
             State Bar No. 24033967
             4 Imperial Oaks
             San Antonio, Texas 78248
             210-695-6684 (Tel)
             210-598-7357 (Fax)
             ron@smeberg.com
             ATTORNEY FOR DEBTOR

# EXHIBIT 1



**RESIDENTIAL REAL ESTATE LISTING AGREEMENT**
**EXCLUSIVE RIGHT TO SELL**

USE OF THIS FORM BY PERSONS WHO ARE NOT MEMBERS OF THE TEXAS ASSOCIATION OF REALTORS®, INC. IS NOT AUTHORIZED.
©Texas Association of REALTORS®, Inc. 2022

---

**1. PARTIES:** The parties to this agreement (this Listing) are:

Seller: **WILLIAM G WENDLANDT**

Address: **40 N INTERSTATE 35 PA1**
City, State, Zip: **Austin, TX 78701**
Phone: **(512)680-1699**
Email/Fax: **wgwendlandt@gmail.com** _____ Email/Fax: _____

Broker: **Urbanspace**
Address: **301 West Ave. Suite 100**
City, State, Zip: **Austin, TX 78701**
Phone: **(512)694-1551**
Email/Fax: **doug@urbanspacerealtors.com** _____ Email/Fax: _____

Seller appoints Broker as Seller's sole and exclusive real estate agent and grants to Broker the exclusive right to sell the Property.

**2. PROPERTY:** "Property" means the land, improvements, and accessories described below, except for any described exclusions.

A. Land: Lot _____, Block _____, **UNT PA1 BLD D TOWERS OF TOWN Continued... See Addendum Property,** Addition, City of _____ in **Travis** County, Texas known as **40 N INTERSTATE 35 PA1 AUSTIN TX 78701-4318** (address/zip code), or as described on attached exhibit. *(If Property is a condominium, attach Condominium Addendum.)*

B. Improvements: The house, garage and all other fixtures and improvements attached to the above-described real property, including without limitation, the following **permanently installed and built-in items**, if any: all equipment and appliances, valances, screens, shutters, awnings, wall-to-wall carpeting, mirrors, ceiling fans, attic fans, mail boxes, television antennas, mounts and brackets for televisions and speakers, heating and air-conditioning units, security and fire detection equipment, wiring, plumbing and lighting fixtures, chandeliers, water softener system, kitchen equipment, garage door openers, cleaning equipment, shrubbery, landscaping, outdoor cooking equipment, and all other property attached to the above-described real property.

C. Accessories: The following described related accessories, if any: window air conditioning units, stove, fireplace screens, curtains and rods, blinds, window shades, draperies and rods, door keys, mailbox keys, above-ground pool, swimming pool equipment and maintenance accessories, artificial fireplace logs, security systems that are not fixtures, and controls for: (i) garage doors, (ii) entry gates, and (iii) other improvements and accessories. "Controls" includes Seller's transferable rights to the (i) software and applications used to access and control improvements or accessories, and (ii) hardware used solely to control improvements or accessories.

D. Exclusions: The following improvements and accessories will be retained by Seller and must be removed prior to delivery of possession: **Any personal items belonging to owner** _____.

---

(TXR-1101) 07-08-22    Initialed for Identification by Broker/Associate _DH_ and Seller _BW_ , _____    Page 1 of 11

**40 N Interstate 35 PA1**
**Austin, TX 78701**

Residential Listing concerning _____

E. <u>Owners' Association</u>: The Property ☒ is ☐ is not subject to mandatory membership in a property owners' association.

3. **LISTING PRICE:** Seller instructs Broker to market the Property at the following price: $ __2,500,000.00__ (Listing Price). Seller agrees to sell the Property for the Listing Price or any other price acceptable to Seller. Seller will pay all typical closing costs charged to sellers of residential real estate in Texas (seller's typical closing costs are those set forth in the residential contract forms promulgated by the Texas Real Estate Commission).

4. **TERM:**

JUNE 30, 2025

A. This Listing begins on ___April 12, 2024___ and ends at 11:59 p.m. on ~~December 31, 2024~~ .

B. If Seller enters into a binding written contract to sell the Property before the date this Listing begins and the contract is binding on the date this Listing begins, this Listing will not commence and will be void.

5. **BROKER COMPENSATION:**

A. When earned and payable, Seller will pay Broker:

☐ (1) _____ % of the sales price.

☒ (2) __6% if sales price is $2M or above / 5% if sales price is below $2M__ .

B. <u>Earned</u>: Broker's compensation is earned when any one of the following occurs during this Listing:
   (1) Seller sells, exchanges, options, agrees to sell, agrees to exchange, or agrees to option the Property to anyone at any price on any terms;
   (2) Broker individually or in cooperation with another broker procures a buyer ready, willing, and able to buy the Property at the Listing Price or at any other price acceptable to Seller; or
   (3) Seller breaches this Listing.

C. <u>Payable</u>: Once earned, Broker's compensation is payable either during this Listing or after it ends at the earlier of:
   (1) the closing and funding of any sale or exchange of all or part of the Property;
   (2) Seller's refusal to sell the Property after Broker's compensation has been earned;
   (3) Seller's breach of this Listing; or
   (4) at such time as otherwise set forth in this Listing.

   Broker's compensation is <u>not</u> payable if a sale of the Property does not close or fund as a result of: (i) Seller's failure, without fault of Seller, to deliver to a buyer a deed or a title policy as required by the contract to sell; (ii) loss of ownership due to foreclosure or other legal proceeding; or (iii) Seller's failure to restore the Property, as a result of a casualty loss, to its previous condition by the closing date set forth in a contract for the sale of the Property.

D. <u>Other Compensation</u>:

   (1) <u>Breach by Buyer Under a Contract</u>: If Seller collects earnest money, the sales price, or damages by suit, compromise, settlement, or otherwise from a buyer who breaches a contract for the sale of the Property entered into during this Listing, Seller will pay Broker, after deducting attorney's fees and collection expenses, an amount equal to the lesser of one-half of the amount collected after deductions or the amount of the Broker's Compensation stated in Paragraph 5A. Any amount paid under this Paragraph 5D(1) is in addition to any amount that Broker may be entitled to receive for subsequently selling the Property.

(TXR-1101) 07-08-22    Initialed for Identification by Broker/Associate ___ and Seller ___, _____    Page 2 of 11



**40 N Interstate 35 PA1**
Residential Listing concerning _____
**Austin, TX 78701**

(2) <u>Service Providers</u>: If Broker refers Seller or a prospective buyer to a service provider (for example, mover, cable company, telecommunications provider, utility, or contractor) Broker may receive a fee from the service provider for the referral. Any referral fee Broker receives under this Paragraph 5D(2) is in addition to any other compensation Broker may receive under this Listing.

(3) <u>Other Fees and/or Reimbursable Expenses</u>: **N/A** _____
_____.

E. <u>Protection Period</u>:

(1) "Protection period" means that time starting the day after this Listing ends and continuing for _____ **45** _____ days. "Sell" means any transfer of any fee simple interest in the Property whether by oral or written agreement or option.

(2) Not later than 10 days after this Listing ends, Broker may send Seller written notice specifying the names of persons whose attention was called to the Property during this Listing. If Seller agrees to sell the Property during the protection period to a person named in the notice or to a relative of a person named in the notice, Seller will pay Broker, upon the closing of the sale, the amount Broker would have been entitled to receive if this Listing were still in effect.

(3) This Paragraph 5E survives termination of this Listing. This Paragraph 5E will not apply if:
   (a) Seller agrees to sell the Property during the protection period; or
   (b) the Property is exclusively listed with another broker who is a member of Texas REALTORS® at the time the sale is negotiated; and
   (c) Seller is obligated to pay the other broker a fee for the sale.

F. <u>County</u>: All amounts payable to Broker are to be paid in cash in **Travis** _____
_____ County, Texas.

G. <u>Escrow Authorization</u>: Seller authorizes, and Broker may so instruct, any escrow or closing agent authorized to close a transaction for the purchase or acquisition of the Property to collect and disburse to Broker all amounts payable to Broker under this Listing.

**6. LISTING SERVICES:**

**<u>Notice Regarding Public Marketing</u>: If the Property is publicly marketed, MLS rules require that Broker file this Listing with the Multiple Listing Services (MLS) within one (1) business day. Public marketing includes, but is not limited to, fliers displayed in the windows, yard signs, digital marketing on public-facing websites, brokerage website displays (including IDX and VOW), digital communications marketing (email blasts), multi-brokerage listing sharing networks, and other applications available to the general public.**

A. <u>Filing</u>: Seller instructs Broker as follows: *(Check 1 or 2 only.)*

[X] (1) Broker will file this Listing with one or more Multiple Listing Services (MLS) according to the following: *(Check only one box.)*

   [X] (a) Broker will file this Listing with one or more Multiple Listing Services (MLS) by the earlier of the time required by MLS rules or 5 days after the date this Listing begins. Seller authorizes Broker to submit information about this Listing and the sale of the Property to the MLS.

   [ ] (b) Seller instructs Broker not to file this Listing with one or more Multiple Listing Services (MLS) until _____ days after the date this Listing begins for the following purpose(s): _____
   _____

   (NOTE: Do not check if prohibited by Multiple Listing Service(s).)

(TXR-1101) 07-08-22    Initialed for Identification by Broker/Associate  and Seller _____, _____    Page 3 of 11

Docusign Envelope ID: FC6EE85C-75CD-4028-85B1-95007A6B43C2

**40 N Interstate 35 PA1**
**Austin, TX  78701**

Residential Listing concerning _____

<u>Notice Regarding MLS Rules</u>: MLS rules require Broker to accurately and timely submit all information the MLS requires including final closing of sales and sales prices. MLS rules may require that the information be submitted to the MLS throughout the time the Listing is in effect. Subscribers to the MLS and appraisal districts may use the information for market evaluation or appraisal purposes. Subscribers are other brokers, agents, and real estate professionals such as appraisers. Any information filed with the MLS becomes the property of the MLS for all purposes. **Submission of information to MLS ensures that persons who use and benefit from the MLS also contribute information.**

☐ (2) Broker will not file this Listing with any Multiple Listing Services (MLS) or other listing service.

**Seller acknowledges and understands that if this option is checked: (1) <u>the Property will not be publicly marketed</u>; (2) the Property will not be included in the MLS database available to real estate agents and brokers from other real estate offices who subscribe to and participate in the MLS, and their buyer clients may not be aware that the Property is offered for sale; (3) the Property will not be included in the MLS's download to various real estate Internet sites that are used by the public to search for property listings; and (4) real estate agents, brokers, and members of the public may be unaware of the terms and conditions under which Seller is marketing the Property. <u>Seller further acknowledges and understands that if this option is checked, and the Property is publicly marketed by anyone, including Seller, MLS rules require that Broker file this Listing with the MLS within one (1) business day.</u>**

B. <u>Listing Content</u>: If Broker files this Listing under Paragraph 6A, the parties agree to the following:

(1) <u>Definitions</u>:
   (a) "Listing Content" means all photographs, images, graphics, video recordings, virtual tours, drawings, written descriptions, remarks, narratives, pricing information, and other copyrightable elements relating to the Property.
   (b) "Seller Listing Content" means Listing Content provided by Seller to Broker or Broker's associates.
   (c) "Broker Listing Content" means Listing Content that is otherwise obtained or produced by Broker or Broker's associates in connection with this Listing.

(2) Seller grants Broker a non-exclusive, irrevocable, worldwide, royalty-free license to use, sublicense through multiple tiers, publish, display, and reproduce the Seller Listing Content, to prepare derivative works of the Seller Listing Content, and to distribute the Seller Listing Content, including any derivative works of the Seller Listing Content. This Paragraph 6B(2) survives termination of this Listing.

(3) All Broker Listing Content is owned exclusively by Broker, and Seller has no right, title or interest in or to any Broker Listing Content.

(4) Seller understands and agrees that both the Seller Listing Content and Broker Listing Content, including any changes to such content, may be filed with the MLS, included in compilations of listings, and otherwise distributed, publicly displayed and reproduced.

**7. ACCESS TO THE PROPERTY:**

A. <u>Authorizing Access</u>: Authorizing access to the Property means giving permission to another person to enter the Property, disclosing to the other person any security codes necessary to enter the Property, and lending a key to the other person to enter the Property, directly or through a keybox. To facilitate the showing and sale of the Property, Seller instructs Broker to:
   (1) access the Property at reasonable times;



(TXR-1101) 07-08-22      Initialed for Identification by Broker/Associate ___ and Seller ___ , ___          Page 4 of 11

**40 N Interstate 35 PA1**
**Austin, TX 78701**

Residential Listing concerning _____

(2) authorize other brokers, their associates, inspectors, appraisers, and contractors to access the Property at reasonable times; and

(3) duplicate keys to facilitate convenient and efficient showings of the Property.

B. <u>Scheduling Companies</u>: Broker may engage the following companies to schedule appointments and to authorize others to access the Property: **N/A** _____ .

C. <u>Keybox</u>: **A keybox is a locked container placed on the Property that holds a key to the Property. A keybox makes it more convenient for brokers, their associates, inspectors, appraisers, and contractors to show, inspect, or repair the Property. The keybox is opened by a special combination, key, or programmed device so that authorized persons may enter the Property, even in Seller's absence. Using a keybox will probably increase the number of showings, but involves risks (for example, unauthorized entry, theft, property damage, or personal injury). Neither the Association of REALTORS® nor MLS requires the use of a keybox.**

(1) Broker [X] is [ ] is not authorized to place a keybox on the Property.

(2) If a tenant occupies the Property at any time during this Listing, Seller will furnish Broker a written statement (for example, TXR No. 1411), signed by all tenants, authorizing the use of a keybox or Broker may remove the keybox from the Property.

D. <u>Liability and Indemnification</u>: When authorizing access to the Property, Broker, other brokers, their associates, any keybox provider, or any scheduling company are not responsible for personal injury or property loss to Seller or any other person. Seller assumes all risk of any loss, damage, or injury. **Except for a loss caused by Broker, Seller will indemnify and hold Broker harmless from any claim for personal injury, property damage, or other loss.**

8. **COOPERATION WITH OTHER BROKERS:** Broker will allow other brokers to show the Property to prospective buyers. Broker will offer to pay the other broker a fee as described below if the other broker procures a buyer that purchases the Property.

A. <u>MLS Participants</u>: If the other broker is a participant in the MLS in which this Listing is filed, Broker will offer to pay the other broker:
(1) if the other broker represents the buyer: **3.000** % of the sales price or $ _____ ; and
(2) if the other broker is a subagent: **1.000** % of the sales price or $ _____ .

B. <u>Non-MLS Brokers</u>: If the other broker is not a participant in the MLS in which this Listing is filed, Broker will offer to pay the other broker:
(1) if the other broker represents the buyer: **1.000** % of the sales price or $ _____ ; and
(2) if the other broker is a subagent: **1.000** % of the sales price or $ _____ .

9. **INTERMEDIARY:** *(Check A or B only.)*

[X] A. <u>Intermediary Status</u>: Broker may show the Property to interested prospective buyers who Broker represents. If a prospective buyer who Broker represents offers to buy the Property, Seller authorizes Broker to act as an intermediary and Broker will notify Seller that Broker will service the parties in accordance with one of the following alternatives.

(1) If a prospective buyer who Broker represents is serviced by an associate other than the associate servicing Seller under this Listing, Broker may notify Seller that Broker will: (a) appoint the associate then servicing Seller to communicate with, carry out instructions of, and provide opinions and advice during negotiations to Seller; and (b) appoint the associate then servicing the prospective buyer to the prospective buyer for the same purpose.

(TXR-1101) 07-08-22    Initialed for Identification by Broker/Associate **DH** and Seller **BW** , _____    Page 5 of 11

**40 N Interstate 35 PA1**
**Austin, TX 78701**

Residential Listing concerning _____

(2) If a prospective buyer who Broker represents is serviced by the same associate who is servicing Seller, Broker may notify Seller that Broker will: (a) appoint another associate to communicate with, carry out instructions of, and provide opinions and advice during negotiations to the prospective buyer; and (b) appoint the associate servicing the Seller under this Listing to the Seller for the same purpose.

(3) Broker may notify Seller that Broker will make no appointments as described under this Paragraph 9A and, in such an event, the associate servicing the parties will act solely as Broker's intermediary representative, who may facilitate the transaction but will not render opinions or advice during negotiations to either party.

☐ B.  No Intermediary Status: Seller agrees that Broker will not show the Property to prospective buyers who Broker represents.

**Notice:** **If Broker acts as an intermediary under Paragraph 9A, Broker and Broker's associates:**
- ♦ **may not disclose to the prospective buyer that Seller will accept a price less than the asking price unless otherwise instructed in a separate writing by Seller;**
- ♦ **may not disclose to Seller that the prospective buyer will pay a price greater than the price submitted in a written offer to Seller unless otherwise instructed in a separate writing by the prospective buyer;**
- ♦ **may not disclose any confidential information or any information Seller or the prospective buyer specifically instructs Broker in writing not to disclose unless otherwise instructed in a separate writing by the respective party or required to disclose the information by the Real Estate License Act or a court order or if the information materially relates to the condition of the property;**
- ♦ **may not treat a party to the transaction dishonestly; and**
- ♦ **may not violate the Real Estate License Act.**

**10.** **CONFIDENTIAL INFORMATION:** During this Listing or after it ends, Broker may not knowingly disclose information obtained in confidence from Seller except as authorized by Seller or required by law. Broker may not disclose to Seller any confidential information regarding any other person Broker represents or previously represented except as required by law.

**11.** **BROKER'S AUTHORITY:**

A.  Broker will use reasonable efforts and act diligently to market the Property for sale, procure a buyer, and negotiate the sale of the Property.

B.  If box 6A(1) is checked, Broker is authorized to display this Listing on the Internet without limitation unless one of the following is checked:

☐ (1) Seller does not want this Listing to be displayed on the Internet.
☐ (2) Seller does not want the address of the Property to be displayed on the Internet.

Notice: Seller understands and acknowledges that, if box 11B(1) is checked, consumers who conduct searches for listings on the Internet will not see information about this Listing in response to their search.

C.  Broker is authorized to market the Property with the following financing options:

☒ (1) Conventional        ☐ (5) Texas Veterans Land Program
☐ (2) VA                  ☐ (6) Owner Financing
☐ (3) FHA                 ☐ (7) Other
☒ (4) Cash

(TXR-1101) 07-08-22    Initialed for Identification by Broker/Associate  and Seller _____ , _____    Page 6 of 11

**40 N Interstate 35 PA1**
Residential Listing concerning _____
**Austin, TX  78701**

D.  In accordance with applicable MLS rules as outlined in Paragraph 6, Broker may:

(1)  advertise the Property by means and methods as Broker determines, including but not limited to creating and placing advertisements with interior and exterior photographic and audio-visual images of the Property and related information in any media and the Internet;
(2)  place a "For Sale" sign on the Property and remove all other signs offering the Property for sale or lease;
(3)  furnish comparative marketing and sales information about other properties to prospective buyers;
(4)  disseminate information about the Property to other brokers and to prospective buyers, including applicable disclosures or notices that Seller is required to make under law or a contract;
(5)  obtain information from any holder of a note secured by a lien on the Property;
(6)  accept and deposit earnest money in trust in accordance with a contract for the sale of the Property;
(7)  disclose the sales price and terms of sale to other brokers, appraisers, or other real estate professionals;
(8)  in response to inquiries from prospective buyers and other brokers, disclose whether the Seller is considering more than one offer (Broker will not disclose the terms of any competing offer unless specifically instructed by Seller);
(9)  advertise, during or after this Listing ends, that Broker "sold" the Property; and
(10) place information about this Listing, the Property, and a transaction for the Property on an electronic transaction platform (typically an Internet-based system where professionals related to the transaction such as title companies, lenders, and others may receive, view, and input information).

E.  Broker is not authorized to execute any document in the name of or on behalf of Seller concerning the Property.

**12. SELLER'S REPRESENTATIONS:** Except as provided by Paragraph 15, Seller represents that:

A.  Seller has fee simple title to and peaceable possession of the Property and all its improvements and fixtures, unless rented, and the legal capacity to convey the Property;
B.  Seller is not bound by a listing agreement with another broker for the sale, exchange, or lease of the Property that is or will be in effect during this Listing;
C.  any pool or spa and any required enclosures, fences, gates, and latches comply with all applicable laws and ordinances;
D.  no person or entity has any right to purchase, lease, or acquire the Property by an option, right of refusal, or other agreement;
E.  Seller is current and not delinquent on all loans and all other financial obligations related to the Property, including but not limited to mortgages, home equity loans, home improvement loans, homeowner association fees, and taxes, except **N/A** _____ ;
F.  Seller is not aware of any liens or other encumbrances against the Property, except **N/A** _____ _____ ;
G.  the Property is not subject to the jurisdiction of any court;
H.  all information relating to the Property Seller provides to Broker is true and correct to the best of Seller's knowledge;
I.  the name of any employer, relocation company, or other entity that provides benefits to Seller when selling the Property is: **N/A** _____ ;
J.  the Seller Listing Content, and the license granted to Broker for the Seller Listing Content, do not violate or infringe upon the rights, including any copyright rights, of any person or entity; and
K.  Seller is aware of the Property being located in the following public improvement district (PID), municipal utility district (MUD), or other statutorily created districts providing water, sewer, drainage, or flood control facilities and services (list all that Seller is aware of): **N/A** _____ .



Urbanspace, 301 West Ave.  Suite 100 Austin TX 78701                                                        Phone: 5126941551          Fax:                    Wendlandt -
Douglas Harrison                               Produced with Lone Wolf Transactions (zipForm Edition) 717 N Harwood St, Suite 2200, Dallas, TX 75201   www.lwolf.com

**40 N Interstate 35 PA1**
**Austin, TX  78701**

Residential Listing concerning _____

**13. SELLER'S ADDITIONAL PROMISES:** Seller agrees to:

A. cooperate with Broker to facilitate the showing, marketing, and sale of the Property;
B. not rent or lease the Property during this Listing without Broker's prior written approval;
C. not negotiate with any prospective buyer who may contact Seller directly, but refer all prospective buyers to Broker;
D. not enter into a listing agreement with another broker for the sale, exchange, lease, or management of the Property to become effective during this Listing without Broker's prior written approval;
E. if box 6A(2) is checked, promptly inform Broker in the event Seller becomes aware that the Property has been publicly marketed;
F. maintain any pool and all required enclosures in compliance with all applicable laws and ordinances;
G. provide Broker with copies of any leases or rental agreements pertaining to the Property and advise Broker of tenants moving in or out of the Property;
H. complete any disclosures or notices required by law or a contract to sell the Property; and
I. amend any applicable notices and disclosures if any material change occurs during this Listing.

**14. LIMITATION OF LIABILITY:**

A. If the Property is or becomes vacant during this Listing, Seller must notify Seller's casualty insurance company and request a "vacancy clause" to cover the Property. Broker is not responsible for the security of the Property nor for inspecting the Property on any periodic basis.

B. **Broker is not responsible or liable in any manner for personal injury to any person or for loss or damage to any person's real or personal property resulting from any act or omission not caused by Broker's negligence, including but not limited to injuries or damages caused by:**
   **(1) other brokers, their associates, inspectors, appraisers, and contractors who are authorized to access the Property;**
   **(2) other brokers or their associates who may have information about the Property on their websites;**
   **(3) acts of third parties (for example, vandalism or theft);**
   **(4) freezing water pipes;**
   **(5) a dangerous condition on the Property;**
   **(6) the Property's non-compliance with any law or ordinance; or**
   **(7) Seller, negligently or otherwise.**

C. **Seller agrees to protect, defend, indemnify, and hold Broker harmless from any damage, costs, attorney's fees, and expenses that:**
   **(1) are caused by Seller, negligently or otherwise;**
   **(2) arise from Seller's failure to disclose any material or relevant information about the Property; or**
   **(3) are caused by Seller giving incorrect information to any person.**

**15. SPECIAL PROVISIONS:**

**16. DEFAULT:** If Seller does not cooperate with Broker to facilitate the showing, marketing, or sale of the Property or otherwise breaches this Listing, Seller is in default and will be liable to Broker for the amount of the Broker's compensation specified in Paragraph 5A and any other compensation Broker is entitled to

(TXR-1101) 07-08-22     Initialed for Identification by Broker/Associate  and Seller _____ , _____     Page 8 of 11

Residential Listing concerning **40 N Interstate 35 PA1**
**Austin, TX 78701**

receive under this Listing; Broker may also terminate this Listing and exercise any other remedy at law. If a sales price is not determinable in the event of an exchange or breach of this Listing, the Listing Price will be the sales price for purposes of computing compensation. If Broker breaches this Listing, Broker is in default and Seller may exercise any remedy at law.

**17. MEDIATION:** The parties agree to negotiate in good faith in an effort to resolve any dispute related to this Listing that may arise between the parties. If the dispute cannot be resolved by negotiation, the dispute will be submitted to mediation. The parties to the dispute will choose a mutually acceptable mediator and will share the cost of mediation equally.

**18. ATTORNEY'S FEES:** If Seller or Broker is a prevailing party in any legal proceeding brought as a result of a dispute under this Listing or any transaction related to or contemplated by this Listing, such party will be entitled to recover from the non-prevailing party all costs of such proceeding and reasonable attorney's fees.

**19. ADDENDA AND OTHER DOCUMENTS:** Addenda that are part of this Listing and other documents that Seller may need to provide are:

- [X] A. Information About Brokerage Services;
- [X] B. Seller Disclosure Notice (§5.008, Texas Property Code);
- [ ] C. Addendum for Seller's Disclosure of Information on Lead-Based Paint and Lead-Based Paint Hazards (required if Property was built before 1978);
- [ ] D. Residential Real Property Affidavit (T-47 Affidavit; related to existing survey);
- [ ] E. MUD, Water District, or Statutory Tax District Disclosure Notice (Chapter 49, Texas Water Code);
- [ ] F. PID Disclosure Notice;
- [ ] G. Request for Information from an Owners' Association;
- [ ] H. Request for Mortgage Information;
- [ ] I. Information about Mineral Clauses in Contract Forms;
- [ ] J. Information about On-Site Sewer Facility;
- [ ] K. Information about Property Insurance for a Buyer or Seller;
- [ ] L. Information about Special Flood Hazard Areas;
- [ ] M. Condominium Addendum to Listing;
- [ ] N. Keybox Authorization by Tenant;
- [ ] O. Seller's Authorization to Release and Advertise Certain Information; and
- [ ] P. _____.

**20. AGREEMENT OF PARTIES:**

A. <u>Entire Agreement</u>: This Listing is the entire agreement of the parties and may not be changed except by written agreement.

B. <u>Assignability</u>: Neither party may assign this Listing without the written consent of the other party.

C. <u>Binding Effect</u>: Seller's obligation to pay Broker earned compensation is binding upon Seller and Seller's heirs, administrators, executors, successors, and permitted assignees.

D. <u>Joint and Several</u>: All Sellers executing this Listing are jointly and severally liable for the performance of all its terms.

E. <u>Governing Law</u>: Texas law governs the interpretation, validity, performance, and enforcement of this Listing.

F. <u>Severability</u>: If a court finds any clause in this Listing invalid or unenforceable, the remainder of this Listing will not be affected and all other provisions of this Listing will remain valid and enforceable.

(TXR-1101) 07-08-22   Initialed for Identification by Broker/Associate DH and Seller BW , _____   Page 9 of 11

**40 N Interstate 35 PA1**
**Austin, TX 78701**

Residential Listing concerning _____

G. <u>Notices</u>: Notices between the parties must be in writing and are effective when sent to the receiving party's address, fax, or e-mail address specified in Paragraph 1.

**21. ADDITIONAL NOTICES:**

A. Broker's compensation or the sharing of compensation between brokers is not fixed, controlled, recommended, suggested, or maintained by the Association of REALTORS®, MLS, or any listing service.

B. In accordance with fair housing laws and the National Association of REALTORS® Code of Ethics, Broker's services must be provided and the Property must be shown and made available to all persons without regard to race, color, religion, national origin, sex, disability, familial status, sexual orientation, or gender identity. Local ordinances may provide for additional protected classes (for example, creed, status as a student, marital status, or age).

C. Broker advises Seller to contact any mortgage lender or other lien holder to obtain information regarding payoff amounts for any existing mortgages or liens on the Property.

D. Broker advises Seller to review the information Broker submits to an MLS or other listing service.

E. Broker advises Seller to remove or secure jewelry, prescription drugs, other valuables, firearms and any other weapons.

F. Broker advises Seller to consult an attorney before using any type of surveillance device in the Property to record or otherwise monitor prospective buyers without their knowledge or consent. Seller should be aware that a prospective buyer might photograph or otherwise record the Property without Seller's knowledge or consent.

G. Statutes or ordinances may regulate certain items on the Property (for example, swimming pools and septic systems). Non-compliance with the statutes or ordinances may delay a transaction and may result in fines, penalties, and liability to Seller.

H. If the Property was built before 1978, Federal law requires the Seller to: (1) provide the buyer with the federally approved pamphlet on lead poisoning prevention; (2) disclose the presence of any known lead-based paint or lead-based paint hazards in the Property; (3) deliver all records and reports to the buyer related to such paint or hazards; and (4) provide the buyer a period up to 10 days to have the Property inspected for such paint or hazards.

I. If Seller is a "foreign person" as defined by federal law, a buyer may be required to withhold certain amounts from the sales proceeds and deliver the same to the Internal Revenue Service to comply with applicable tax law. A "foreign person" is a: (1) nonresident alien individual; (2) foreign corporation that has not made an election under section 897(i) of the Internal Revenue Code to be treated as a domestic corporation; or (3) foreign partnership, trust, or estate. The definition does not include a resident alien individual. Seller notifies Broker that Seller ☐ is ☒ is not a "foreign person" as defined by federal law. If Seller is unsure whether Seller qualifies as a "foreign person" under federal law, Broker advises Seller to consult a tax professional or an attorney.

J. Broker advises Seller to refrain from transmitting personal information, such as bank account numbers or other financial information, via unsecured email or other electronic communication to reduce risk of wire fraud.

K. Broker cannot give legal advice. READ THIS LISTING CAREFULLY. If you do not understand the effect of this Listing, consult an attorney BEFORE signing.

(TXR-1101) 07-08-22    Initialed for Identification by Broker/Associate  and Seller _____ , _____    Page 10 of 11

**40 N Interstate 35 PA1**
**Austin, TX   78701**

Residential Listing concerning _____

---

**Urbanspace**                              9001684                    **WILLIAM G WENDLANDT**
Broker's Printed Name                      License No.                 Seller's Printed Name

*Douglas Harrison*                          4/12/2024                   *Bill Wendlandt*                    4/12/2024
F4D20EFC8E5A445

☐ Broker's Signature                              Date                  Seller's Signature                              Date
☒ Broker's Associate's Signature, as an authorized agent of
   Broker

**Douglas Harrison**                                                    _____
Broker's Associate's Printed Name, if applicable                       Seller's Printed Name

                                                                        _____
                                                                        Seller's Signature                              Date

Urbanspace, 301 West Ave.  Suite 100 Austin TX 78701                          Phone: 5126941551          Fax:                    Wendlandt -
Douglas Harrison                                    Produced with Lone Wolf Transactions (zipForm Edition) 717 N Harwood St, Suite 2200, Dallas, TX  75201   www.lwolf.com

# ADDENDUM

PROPERTY: **40 N Interstate 35 PA1, Austin, TX   78701**

**1) Property, Block Number 1**
**LAKE CONDOMINIUMS AMENDED PLUS 2.128% INTEREST IN COMMON AREA**


Date: 4/12/2024                                         Date: 4/12/2024

DocuSigned by:                                          DocuSigned by:

*Douglas Harrison*                                     *Bill Wendlandt*

Signature                                              Signature


Date: _____                                 Date: _____


Signature                                              Signature

_____

Addendum

Urbanspace, 301 West Ave.  Suite 100 Austin TX 78701          Phone: 5126941551          Fax:                    Wendlandt -
Douglas Harrison                              Produced with Lone Wolf Transactions (zipForm Edition) 717 N Harwood St, Suite 2200, Dallas, TX  75201  www.lwolf.com

# EXHIBIT 2

Docusign Envelope ID: B36F9B7A-12CE-48AA-AB09-D8487C6B44A0

# EXHIBIT 2



©2024 Unlock MLS® v 06-21-24

## ADDENDUM
## CONFIRMING BROKER COMPENSATION
### (Sale Transaction)

USE OF THIS FORM BY PERSONS WHO ARE NOT SUBSCRIBERS OF UNLOCK MLS IS NOT AUTHORIZED.

CONCERNING THE PROPERTY AT ___40___ N Interstate 35 Highway   PA1   Austin   TX   78701

(Street Address and City)

***NOTE:*** *This addendum confirms who will pay each portion of the compensation to be paid to the brokers in the transaction contemplated in the sales contract to which it is attached. Seller, Seller's Broker, Buyer, and Buyer's Broker should sign if paying or receiving compensation to confirm the amounts. Signing this addendum does not make the brokers parties to the attached sales contract.*

At the closing of the sale by Seller to Buyer of the Property described in the sales contract to which this Addendum is attached:

Seller will pay the following compensation:

To Seller's Broker (*aka Listing Broker*)                To Buyer's Broker (*aka Other Broker*)

☐ $_____ or                ☐ $_____ or

☒ ____3____% of the sales price.             ☒ ____3____% of the sales price.

Buyer will pay the following compensation:

To Seller's Broker (*aka Listing Broker*)                To Buyer's Broker (*aka Other Broker*)

☐ $_____ or                ☐ $_____ or

☐ _____% of the sales price.              ☐ _____% of the sales price.

The compensation will be paid in _____Travis_____County, Texas. Seller and Buyer authorize the Escrow Agent to pay the brokers from their respective funds at closing. The parties hereby amend the compensation payments to Seller's Broker and Buyer's Broker in their respective representation agreements to reflect the terms of this Addendum.

**Buyer**: _*Angelica Gutierrez Castaño*_ (signature)        **Seller**: _William G. Wendlandt_ (signature)

D02BFF79DD97444...

Printed Name: Angelica Gutierrez Castaño       Printed Name: William G Wendlandt

_____ (signature)           _____ (signature)

Printed Name: _____          Printed Name: _____

**Buyer's Broker**: ___Hills and Views LLC___     **Seller's Broker**: _____Urbanspace_____

By (signature): _____        By (signature): _____

Printed Name: Hills and Views Realty          Printed Name: _____

Title: _____                 Title: _____



# EXHIBIT 3

AuthorSign ID: E564502E-IDE-B36F9B7A-12CE-4BAA-A809-D8437C6B4A0

**EXHIBIT 3**

PROMULGATED BY THE TEXAS REAL ESTATE COMMISSION (TREC)
**RESIDENTIAL CONDOMINIUM CONTRACT (RESALE)**
NOTICE: Not For Use Where Seller Owns Fee Simple Title To Land Beneath Unit

11-04-2024

**TREC**



**1. PARTIES:** The parties to this contract are _William G Wendlandt_ (Seller) and _Angelica Gutierrez Castaño_ (Buyer). Seller agrees to sell and convey to Buyer and Buyer agrees to buy from Seller the Property defined below.

**2. PROPERTY AND CONDOMINIUM DOCUMENTS:**

A. The Condominium Unit, improvements and accessories described below are collectively referred to as the Property (Property).

(1) CONDOMINIUM UNIT: Unit _PA1_, in Building _D_, of _Towers of Town Lake Condominiums_, a condominium project, located at _40_ _N Interstate 35 Highway_ _78701_ _UNT PA1 BLD D TOWERS OF TOWN LAKE CONDOMINIUMS AMENDED PLUS 2.128% INTEREST IN COMMON AREA_ (address/zip code), City of _Austin_, County of _Travis_, Texas, described in the Condominium Declaration and Plat and any amendments thereto of record in said County; together with such Unit's undivided interest in the Common Elements designated by the Declaration, including those areas reserved as Limited Common Elements appurtenant to the Unit and such other rights to use the Common Elements which have been specifically assigned to the Unit in any other manner. Parking areas assigned to the Unit are: _6 Assigned parking spots_ _Identified with Numbers:106,07,08,09,10,11 and an electric charger_.

(2) IMPROVEMENTS: All fixtures and improvements attached to the above described real property including without limitation, the following **permanently installed and built-in items**, if any: all equipment and appliances, valances, screens, shutters, awnings, wall-to-wall carpeting, mirrors, ceiling fans, attic fans, mail boxes, television antennas, mounts and brackets for televisions and speakers, heating and air conditioning units, security and fire detection equipment, wiring, plumbing and lighting fixtures, chandeliers, shrubbery, landscaping, outdoor cooking equipment, and all other property attached to the above described Condominium Unit.

(3) ACCESSORIES: The following described related accessories, if any: window air conditioning units, stove, fireplace screens, curtains and rods, blinds, window shades, draperies and rods, door keys, mailbox keys, above ground pool, swimming pool equipment and maintenance accessories, artificial fireplace logs, security systems that are not fixtures, and controls for: (i) garage doors, (ii) entry gates, and (iii) other improvements and accessories. "Controls" includes Seller's transferable rights to the (i) software and applications used to access and control improvements or accessories, and (ii) hardware used solely to control improvements or accessories.

(4) EXCLUSIONS: The following improvements and accessories will be retained by Seller and must be removed prior to delivery of possession:_____

B. The Declaration, Bylaws and any Rules of the Association are called "Documents". (Check one box only):

☐ (1) Buyer has received a copy of the Documents. Buyer is advised to read the Documents before signing the contract.

☒ (2) Buyer has not received a copy of the Documents. Seller, at Seller's expense, shall deliver the Documents to Buyer within _10_ days after the Effective Date of the contract. Buyer may terminate the contract within 7 days after Buyer receives the Documents by giving written notice of termination to Seller. If Buyer terminates the contract pursuant to this paragraph, the earnest money will be refunded to Buyer. Buyer retains rights to terminate under Section 82.156, Texas Property Code.

C. The Resale Certificate from the condominium owners association (the Association) is called the "Certificate". The Certificate must be in a form promulgated by TREC or required by the parties. The Certificate must have been prepared, at Seller's expense, no more than 3 months before the date it is delivered to Buyer and must contain at a minimum the information required by Section 82.157, Texas Property Code. (Check one box only):

☐ (1) Buyer has received the Certificate.

☒ (2) Buyer has not received the Certificate. Seller shall deliver the Certificate to Buyer within _10_ days after the Effective Date of the contract. Buyer may terminate the contract within 7 days after the date Buyer receives the Certificate by giving written notice of termination to Seller. If Buyer terminates the contract pursuant to this paragraph, the earnest money will be refunded to Buyer. Buyer retains rights to terminate under Section 82.156, Texas Property Code.

☐ (3) Buyer has received Seller's affidavit that Seller requested information from the Association concerning its financial condition as required by the Texas Property Code, and that the Association did not provide a Certificate or information required in the Certificate. Buyer and Seller agree to waive the requirement to furnish the Certificate.

D. If the Documents reveal that the Property is subject to a right of refusal under which the Association or a member of the Association may purchase the Property, the Effective Date shall be amended to the date that Buyer receives a copy of the Association's certification that: (i) Seller has complied with the requirements under the right of refusal; and (ii) all persons who may exercise the right of refusal have not exercised or have waived the right to buy the Property. If Buyer does not receive the Association's certification within _10_ days after the Effective Date or if the right of refusal is exercised, this contract shall terminate and the earnest money shall be refunded to Buyer.

This copyright protected form was produced using Lone Wolf Real Estate Technologies - 231 Shearson Crescent #310, Cambridge, Ontario, Canada N1T 1J3. This form presented by Rosa E. Orozco | Hills and Views LLC | (512) 994-4618 | Rosyrealtor@live.com          **TRANSACTIONS** TXR 1605

Contract Concerning ___40  N Interstate 35 Highway  PA1  Austin  TX  78701 Page 2 of 10   11-04-2024
(Address of Property)

## 3. SALES PRICE:
A. Cash portion of Sales Price payable by Buyer at closing .....................$_____555,000.00_____
The term "Cash portion of the Sales Price" does not include proceeds from borrowing of any kind or selling other real property except as disclosed in this contract.
B. Sum of all financing described in the attached: ☒  Third Party Financing Addendum,
☐  Loan Assumption Addendum, ☐  Seller Financing Addendum ....$_____1,295,000.00_____
C. Sales Price (Sum of A and B) ........................................................$_____1,850,000.00_____

## 4. LEASES: Except as disclosed in this contract, Seller is not aware of any leases affecting the Property. After the Effective Date, Seller may not, without Buyer's written consent, create a new lease, amend any existing lease, or convey any interest in the Property. (Check all applicable boxes)
☐A. RESIDENTIAL LEASES: The Property is subject to one or more residential leases and the Addendum Regarding Residential Leases is attached to this contract.
☐B. FIXTURE LEASES: Fixtures on the Property are subject to one or more fixture leases (for example, solar panels, propane tanks, water softener, security system) and the Addendum Regarding Fixture Leases is attached to this contract.

## 5. EARNEST MONEY AND TERMINATION OPTION.
A. DELIVERY OF EARNEST MONEY AND OPTION FEE:  Within 3 days after the Effective Date, Buyer must deliver to ___Heritage Title Compay - Mindy Hallford___ (Escrow Agent) at
_____(address): $___20,000.00___ as earnest money and $___1,000.00___ as the Option Fee. The earnest money and Option Fee shall be made payable to Escrow Agent and may be paid separately or combined in a single payment.
(1) Buyer shall deliver additional earnest money of $_____0.00_____ to Escrow Agent within _____ days after the Effective Date of this contract.
(2) If the last day to deliver the earnest money, Option Fee, or the additional earnest money falls on a Saturday, Sunday, or legal holiday, the time to deliver the earnest money, Option Fee, or the additional earnest money, as applicable, is extended until the end of the next day that is not a Saturday, Sunday, or legal holiday.
(3) The amount(s) Escrow Agent receives under this paragraph shall be applied first to the Option Fee, then to the earnest money, and then to the additional earnest money.
(4) Buyer authorizes Escrow Agent to release and deliver the Option Fee to Seller at any time without further notice to or consent from Buyer, and releases Escrow Agent from liability for delivery of the Option Fee to Seller. The Option Fee will be credited to the Sales Price at closing.
B. TERMINATION OPTION: For nominal consideration, the receipt of which Seller acknowledges, and Buyer's agreement to pay the Option Fee within the time required, Seller grants Buyer the unrestricted right to terminate this contract by giving notice of termination to Seller within ___11___ days after the Effective Date of this contract (Option Period). Notices under this paragraph must be given by 5:00 p.m. (local time where the Property is located) by the date specified.  If Buyer gives notice of termination within the time prescribed: (i) the Option Fee will not be refunded and Escrow Agent shall release any Option Fee remaining with Escrow Agent to Seller; and (ii) any earnest money will be refunded to Buyer.
C. FAILURE TO TIMELY DELIVER EARNEST MONEY: If Buyer fails to deliver the earnest money within the time required, Seller may terminate this contract or exercise Seller's remedies under Paragraph 15, or both, by providing notice to Buyer before Buyer delivers the earnest money.
D. FAILURE TO TIMELY DELIVER  OPTION FEE: If no dollar amount is stated as the Option Fee or if Buyer fails to deliver the Option Fee within the time required, Buyer shall not have the unrestricted right to terminate this contract under this Paragraph 5.
E. TIME: **Time is of the essence for this paragraph and strict compliance with the time for performance is required.**

## 6. TITLE POLICY:
A. TITLE POLICY: Seller shall furnish to Buyer at ☒Seller's  ☐Buyer's expense an owner policy of title insurance (Title Policy) issued by ___Heritage Title Compay - Mindy Hallford___ (Title Company) in the amount of the Sales Price, dated at or after closing, insuring Buyer against loss under the provisions of the Title Policy, subject to the promulgated exclusions (including existing building and zoning ordinances) and the following exceptions:
(1) Restrictive covenants common to the platted subdivision in which the Property is located.
(2) The standard printed exception for standby fees, taxes and assessments.
(3) Liens created as part of the financing described in Paragraph 3.
(4) Terms and provisions of the Documents including the assessments and platted easements.
(5) Reservations or exceptions otherwise permitted by this contract or as may be approved by Buyer in writing.
(6) The standard printed exception as to marital rights.
(7) The standard printed exception as to waters, tidelands, beaches, streams, and related matters.
(8) The standard printed exception as to discrepancies, conflicts, shortages in area or boundary lines, encroachments or protrusions, or overlapping improvements.
(9) The exception or exclusion regarding minerals approved by the Texas Department of Insurance.

Initialed for identification by Buyer _____ and Seller _____ TREC NO. 30-17

This copyright protected form was produced using Lone Wolf Real Estate Technologies
Crescent #310, Cambridge, Ontario, Canada N1T 1J3. This form presented by Rosa E. Orozco | Hills and
Views LLC | (512) 994-4618 | Rosyrealtor@live.com

TRANSACTIONS TXR 1605
TransactionDesk Edition

DocuSign Envelope ID: B36E9B7A-12CE-43AA-A909-D837C651A0

Contract Concerning __40__ _N Interstate 35 Highway_ _PA1_ _Austin_ __TX__ _78701_ Page 3 of 10        11-04-2024
(Address of Property)

B. COMMITMENT: Within 20 days after the Title Company receives a copy of this contract, Seller shall furnish to Buyer a commitment for title insurance (Commitment) and, at Buyer's expense, legible copies of restrictive covenants and documents evidencing exceptions in the Commitment (Exception Documents) other than the standard printed exceptions. Seller authorizes the Title Company to deliver the Commitment and Exception Documents to Buyer at Buyer's address shown in Paragraph 21. If the Commitment and Exception Documents are not delivered to Buyer within the specified time, the time for delivery will be automatically extended up to 15 days or 3 days before the Closing Date, whichever is earlier. If the Commitment and Exception Documents are not delivered within the time required, Buyer may terminate this contract and the earnest money will be refunded to Buyer.

C. OBJECTIONS: Buyer may object in writing to defects, exceptions, or encumbrances to title: disclosed in the Commitment other than items 6A(1) through (9) above; or which prohibit the following use or activity: _Residential Use_ .

Buyer must object the earlier of (i) the Closing Date or (ii) ___10___ days after Buyer receives the Commitment and Exception Documents. Buyer's failure to object within the time allowed will constitute a waiver of Buyer's right to object; except that the requirements in Schedule C of the Commitment are not waived by Buyer. Provided Seller is not obligated to incur any expense, Seller shall cure any timely objections of Buyer or any third party lender within 15 days after Seller receives the objections (Cure Period) and the Closing Date will be extended as necessary. If objections are not cured within the Cure Period, Buyer may, by delivering notice to Seller within 5 days after the end of the Cure Period: (i) terminate this contract and the earnest money will be refunded to Buyer; or (ii) waive the objections. If Buyer does not terminate within the time required, Buyer shall be deemed to have waived the objections. If the Commitment is revised or any new Exception Document(s) is delivered, Buyer may object to any new matter revealed in the revised Commitment or new Exception Document(s) within the same time stated in this paragraph to make objections beginning when the revised Commitment or Exception Document(s) is delivered to Buyer.

D. TITLE NOTICES:
(1) ABSTRACT OR TITLE POLICY: Broker advises Buyer to have an abstract of title covering the Property examined by an attorney of Buyer's selection, or Buyer should be furnished with or obtain a Title Policy. If a Title Policy is furnished, the Commitment should be promptly reviewed by an attorney of Buyer's choice due to the time limitations on Buyer's right to object.

(2) STATUTORY TAX DISTRICTS: If the Property is situated in a utility or other statutorily created district providing water, sewer, drainage, or flood control facilities and services, Chapter 49, Texas Water Code, requires Seller to deliver and Buyer to sign the statutory notice relating to the tax rate, bonded indebtedness, or standby fee of the district prior to final execution of this contract.

(3) TIDE WATERS: If the Property abuts the tidally influenced waters of the state, §33.135, Texas Natural Resources Code, requires a notice regarding coastal area property to be included in the contract. An addendum containing the notice promulgated by TREC or required by the parties must be used.

(4) ANNEXATION: If the Property is located outside the limits of a municipality, Seller notifies Buyer under §5.011, Texas Property Code, that the Property may now or later be included in the extraterritorial jurisdiction of a municipality and may now or later be subject to annexation by the municipality. Each municipality maintains a map that depicts its boundaries and extraterritorial jurisdiction. To determine if the Property is located within a municipality's extraterritorial jurisdiction or is likely to be located within a municipality's extraterritorial jurisdiction, contact all municipalities located in the general proximity of the Property for further information.

(5) PROPERTY LOCATED IN A CERTIFICATED SERVICE AREA OF A UTILITY SERVICE PROVIDER: Notice required by §13.257, Water Code: The real property, described in Paragraph 2, that you are about to purchase may be located in a certificated water or sewer service area, which is authorized by law to provide water or sewer service to the properties in the certificated area. If your property is located in a certificated area there may be special costs or charges that you will be required to pay before you can receive water or sewer service. There may be a period required to construct lines or other facilities necessary to provide water or sewer service to your property. You are advised to determine if the property is in a certificated area and contact the utility service provider to determine the cost that you will be required to pay and the period, if any, that is required to provide water or sewer service to your property. The undersigned Buyer hereby acknowledges receipt of the foregoing notice at or before the execution of a binding contract for the purchase of the real property described in Paragraph 2 or at closing of purchase of the real property.

(6) PUBLIC IMPROVEMENT DISTRICTS: If the Property is in a public improvement district, Seller must give Buyer written notice as required by §5.014, Property Code. An addendum containing the required notice shall be attached to this contract.

(7) TRANSFER FEES: If the Property is subject to a private transfer fee obligation, §5.205, Property Code, requires Seller to notify Buyer as follows: The private transfer fee obligation may be governed by Chapter 5, Subchapter G of the Texas Property Code.

(8) PROPANE GAS SYSTEM SERVICE AREA: If the Property is located in a propane gas system service area owned by a distribution system retailer, Seller must give Buyer written notice as required by §141.010, Texas Utilities Code. An addendum containing the notice approved by TREC or required by the parties should be used.

Initialed for identification by Buyer ____ and Seller ____        TREC NO. 30-17

This copyright protected form was produced using Lone Wolf Real Estate Technologies - 231 Shearson Crescent #310, Cambridge, Ontario, Canada N1T 1J3. This form presented by Rosa E. Orozco | Hills and Views LLC | (512) 994-4618 | Rosyrealtor@live.com

TXR 1605

Docusign Envelope ID: B36F9B7A-12CE-4BAA-A809-D8487C8B4A0

Contract Concerning __40  N Interstate 35 Highway  PA1  Austin__ TX 78701 __ Page 4 of 10__        11-04-2024
(Address of Property)

(9) NOTICE OF WATER LEVEL FLUCTUATIONS: If the Property adjoins an impoundment of water, including a reservoir or lake, constructed and maintained under Chapter 11, Water Code, that has a storage capacity of at least 5,000 acre-feet at the impoundment's normal operating level, Seller hereby notifies Buyer: "The water level of the impoundment of water adjoining the Property fluctuates for various reasons, including as a result of: (1) an entity lawfully exercising its right to use the water stored in the impoundment; or (2) drought or flood conditions."

(10) CERTIFICATE OF MOLD REMEDIATION:  If the Property has been remediated for mold, Seller must provide to Buyer each certificate of mold damage remediation issued under §1958.154, Occupations Code, during the 5 years preceding the sale of the Property.

(11) REQUIRED NOTICES: The following notices have been given or are attached to this contract (for example, utility, water, drainage, and public improvement districts):


Seller's failure to provide applicable statutory notices may provide Buyer with remedies or rights to terminate the contract.

**7. PROPERTY CONDITION:**
A. ACCESS, INSPECTIONS AND UTILITIES: Seller shall permit Buyer and Buyer's agents access to the Property at reasonable times. Buyer may have the Property inspected by inspectors selected by Buyer and licensed by TREC or otherwise permitted by law to make inspections. Any hydrostatic testing must be separately authorized by Seller in writing. Seller at Seller's expense shall immediately cause existing utilities to be turned on and shall keep the utilities on during the time this contract is in effect .

B. SELLER'S DISCLOSURE NOTICE PURSUANT TO §5.008, TEXAS PROPERTY CODE (Notice): (Check one box only)
☒ (1) Buyer has received the Notice.
☐ (2) Buyer has not received the Notice. Within _____ days after the Effective Date of this contract, Seller shall deliver the Notice to Buyer. If Buyer does not receive the Notice, Buyer may terminate this contract at any time prior to the closing and the earnest money will be refunded to Buyer. If Seller delivers the Notice, Buyer may terminate this contract for any reason within 7 days after Buyer receives the Notice or prior to the closing, whichever first occurs, and the earnest money will be refunded to Buyer.
☐ (3) The Texas Property Code does not require this Seller to furnish the Notice.

C. SELLER'S DISCLOSURE OF LEAD-BASED PAINT AND LEAD-BASED PAINT HAZARDS is required by Federal law for a residential dwelling constructed prior to 1978.

D. ACCEPTANCE OF PROPERTY CONDITION:  "As Is" means the present condition of the Property with any and all defects and without warranty except for the warranties of title and the warranties in this contract. Buyer's agreement to accept the Property As Is under Paragraph 7D (1) or (2) does not preclude Buyer from inspecting the Property under Paragraph 7A, from negotiating repairs or treatments in a subsequent amendment, or from terminating this contract during the Option Period, if any.
(Check one box only)
☒ (1) Buyer accepts the Property As Is.
☐ (2) Buyer accepts the Property As Is provided Seller, at Seller's expense, shall complete the following specific repairs and treatments:_____
_____.
(Do not insert general phrases, such as "subject to inspections," that do not identify specific repairs and treatments.)

E. LENDER REQUIRED REPAIRS AND TREATMENTS: Unless otherwise agreed in writing, neither party is obligated to pay for lender required repairs, which includes treatment for wood destroying insects. If the parties do not agree to pay for the lender required repairs or treatments, this contract will terminate and the earnest money will be refunded to Buyer. If the cost of lender required repairs and treatments exceeds 5% of the Sales Price, Buyer may terminate this contract and the earnest money will be refunded to Buyer.

F. COMPLETION OF REPAIRS AND TREATMENTS: Unless otherwise agreed in writing, Seller shall complete all agreed repairs and treatments prior to the Closing Date and obtain any required permits. The repairs and treatments must be performed by persons who are licensed to provide such repairs or treatments or, if no license is required by law, are commercially engaged in the trade of providing such repairs or treatments. Seller shall: (i) provide Buyer with copies of documentation from the repair person(s) showing the scope of work and payment for the work completed; and (ii) at Seller's expense, arrange for the transfer of any transferable warranties received with respect to the repairs and treatments to Buyer at closing. If Seller fails to complete any agreed repairs and treatments prior to the Closing Date, Buyer may exercise remedies under Paragraph 15 or extend the Closing Date up to 5 days if necessary for Seller to complete repairs and treatments.

G. ENVIRONMENTAL MATTERS: Buyer is advised that the presence of wetlands, toxic substances, including asbestos and wastes or other environmental hazards or the presence of a threatened or endangered species or its habitat may affect Buyer's intended use of the Property. If Buyer is concerned about these matters, an addendum promulgated by TREC or required by the parties should be used.

H. RESIDENTIAL SERVICE CONTRACTS:  Buyer may purchase a residential service contract from a provider or administrator licensed by the Texas Department of Licensing and Regulation. If Buyer purchases a residential service contract, Seller shall reimburse Buyer at closing for the cost of the residential service contract in an amount not exceeding $ 600.00 . Buyer

Initialed for identification by Buyer __VM__ and Seller __DO__        TREC NO. 30-17

This copyright protected form was produced using Lone Wolf Real Estate Technologies
Crescent #310, Cambridge, Ontario, Canada N1T 1J3. This form presented by Rosa E. Orozco | Hills and
Views LLC | (512) 994-4618 | Rosyrealtor@live.com |

TRANSACTIONS TXR 1605
TransactionDesk Edition

Contract Concerning __40 N Interstate 35 Highway PA1__ Austin TX 78701 Page 5 of 10    11-04-2024
(Address of Property)

should review any residential service contract for the scope of coverage, exclusions and limitations. **The purchase of a residential service contract is optional. Similar coverage may be purchased from various companies authorized to do business in Texas.**

**8. BROKERS & SALES AGENTS:**
  A. BROKER OR SALES AGENT DISCLOSURE: Texas law requires a real estate broker or sales agent who is a party to a transaction or acting on behalf of a spouse, parent, child, business entity in which the broker or sales agent owns more than 10%, or a trust for which the broker or sales agent acts as a trustee or of which the broker or sales agent or the broker or sales  agent's spouse, parent or child is a beneficiary, to notify the other party in writing before entering into a contract of sale. Disclose if applicable: __N/A_____
_____.
  B. BROKERS' FEES: All obligations of the parties for payment of brokers' fees are contained in separate written agreements.

**9. CLOSING:**
  A. The closing of the sale will be on or before _____May_____ 23___, 20_25___, or within 7 days after objections to matters disclosed in the Commitment have been cured, whichever date is later (Closing Date). If either party fails to close the sale by the Closing Date, the non-defaulting party may exercise the remedies contained in Paragraph 15.
  B. At closing:
    (1) Seller shall execute and deliver a general warranty deed conveying title to the Property to Buyer and showing no additional exceptions to those permitted in Paragraph 6 and furnish tax statements or certificates showing no delinquent taxes on the Property.
    (2) Buyer shall pay the Sales Price in good funds acceptable to the Escrow Agent.
    (3) Seller and Buyer shall execute and deliver any notices, statements, certificates, affidavits, releases, loan documents, transfer of any warranties, and other documents reasonably required for the closing of the sale and the issuance of the Title Policy.
    (4) There will be no liens, assessments, or security interests against the Property which will not be satisfied out of the sales proceeds unless securing the payment of any loans assumed by Buyer and assumed loans will not be in default.
    (5) Private transfer fees (as defined by Chapter 5, Subchapter G of the Texas Property Code) will be the obligation of Seller unless provided otherwise in this contract. This paragraph does not apply to fees assessed by the Association.

**10. POSSESSION:**
  A. BUYER'S POSSESSION: Seller shall deliver to Buyer possession of the Property in its present or required condition, ordinary wear and tear excepted: ☒ upon closing and funding ☐ according to a temporary residential lease form promulgated by TREC or other written lease required by the parties. Any possession by Buyer prior to closing or by Seller after closing which is not authorized by a written lease will establish a tenancy at sufferance relationship between the parties. **Consult your insurance agent prior to change of ownership and possession because insurance coverage may be limited or terminated. The absence of a written lease or appropriate insurance coverage may expose the parties to economic loss.**
  B. SMART DEVICES: "Smart Device" means a device that connects to the internet to enable remote use, monitoring, and management of: (i) the Property; (ii) items identified in any Non-Realty Items Addendum; or (iii) items in a Fixture Lease assigned to Buyer. At the time Seller delivers possession of the Property to Buyer, Seller shall:
    (1) deliver to Buyer written information containing all access codes, usernames, passwords, and applications Buyer will need to access, operate, manage, and control the Smart Devices; and
    (2) terminate and remove all access and connections to the improvements and accessories from any of Seller's personal devices including but not limited to phones and computers.

**11. SPECIAL PROVISIONS:** (This paragraph is intended to be used only for additional informational items. An informational item is a statement that completes a blank in a contract form, discloses factual information, or provides instructions. Real estate brokers and sales agents are prohibited from practicing law and shall not add to, delete, or modify any provision of this contract unless drafted by a party to this contract or a party's attorney.)

Seller to pay 8/2 months for HOA fees at the closing. Title will disburse to HOA.

**12. SETTLEMENT AND OTHER EXPENSES:**
  A. The following expenses must be paid at or prior to closing:
    (1) Seller shall pay the following expenses (Seller's Expenses):
      (a) releases of existing liens, including prepayment penalties and recording fees; lender, FHA, or VA completion requirements; tax statements or certificates; preparation of deed; one-half of escrow fee; brokerage fees that Seller has agreed to pay; and other expenses payable by Seller under this contract;
      (b) the following amount to be applied to brokerage fees that Buyer has agreed to pay: ☐$_____ or ☐ _____% of the Sales Price (check one box only); and
      (c) an amount not to exceed $ _____ to be applied to other Buyer's Expenses.
    (2) Buyer shall pay the following expenses (Buyer's Expenses): Appraisal fees; loan application fees; origination charges; credit reports; preparation of loan documents; interest on the notes from date of disbursement to one month prior to dates of first monthly payments; recording fees; copies of easements and restrictions; loan title policy with endorsements required by lender; loan-related inspection fees; photos; amortization schedules; one-half of escrow fee; all prepaid items, including required premiums for flood and hazard insurance, reserve deposits for insurance, ad valorem taxes and special governmental assessments; final compliance inspection; courier fee; repair inspection; underwriting fee; wire transfer fee; expenses incident to any loan; Private Mortgage Insurance Premium (PMI), VA Loan

Initialed for identification by Buyer __AVC__ and Seller __WGW__    TREC NO. 30-17

This copyright protected form was produced using Lone Wolf Real Estate Technologies  231 Okenson
Crescent #310, Cambridge, Ontario, Canada N1T 1J3. This form presented by Rosa E. Orozco | Hills and
Views LLC | (512) 994-4618 | Rosyrealtor@live.com

TRANSACTIONS TXR 1605
TransactionDesk Edition

Contract Concerning    40   N Interstate 35 Highway   PA1    Austin    TX   78701   Page 6 of 10     11-04-2024

(Address of Property)

Funding Fee, or FHA Mortgage Insurance Premium (MIP) as required by the lender; brokerage fees that Buyer has agreed to pay; and other expenses payable by Buyer under this contract.

(3) Buyer shall pay any and all Association fees, deposits, reserves and other charges resulting from the transfer of the Property not to exceed $ ___One Half___ and Seller shall pay any excess. This paragraph does not apply to: (i) regular periodic maintenance fees, assessments, or dues (including prepaid items) that are prorated by Paragraph 13, and (ii) costs and fees provided by Paragraph 2.

B. If any expense exceeds an amount expressly stated in this contract for such expense to be paid by a party, that party may terminate this contract unless the other party agrees to pay such excess. Buyer may not pay charges and fees expressly prohibited by FHA, VA, Texas Veterans Land Board or other governmental loan program regulations.

**13. PRORATIONS:** Taxes for the current year, interest, rents, and regular periodic maintenance fees, assessments, and dues (including prepaid items) will be prorated through the Closing Date. The tax proration may be calculated taking into consideration any change in exemptions that will affect the current year's taxes. If taxes for the current year vary from the amount prorated at closing, the parties shall adjust the prorations when tax statements for the current year are available. If taxes are not paid at or prior to closing, Buyer shall pay taxes for the current year. Cash reserves from regular condominium assessments for deferred maintenance or capital improvements established by the Association will not be credited to Seller. Any special condominium assessment due and unpaid at closing will be the obligation of Seller.

**14. CASUALTY LOSS:** If any part of the Unit which Seller is solely obligated to maintain and repair under the terms of the Declaration is damaged or destroyed by fire or other casualty, Seller shall restore the same to its previous condition as soon as reasonably possible, but in any event by the Closing Date. If Seller fails to do so due to factors beyond Seller's control, Buyer may (a) terminate this contract and the earnest money will be refunded to Buyer, (b) extend the time for performance up to 15 days and the Closing Date will be extended as necessary or (c) accept the Property in its damaged condition with an assignment of insurance proceeds, if permitted by Seller's insurance carrier, and receive credit from Seller at closing in the amount of the deductible under the insurance policy. If any part of the Common Elements or Limited Common Elements appurtenant to the Unit is damaged or destroyed by fire or other casualty loss, Buyer will have 7 days from receipt of notice of such casualty loss within which to notify Seller in writing that the contract will be terminated unless Buyer receives written confirmation from the Association that the damaged condition will be restored to its previous condition within a reasonable time at no cost to Buyer. Unless Buyer gives such notice within such time, Buyer will be deemed to have accepted the Property without confirmation of such restoration. Seller will have 7 days from the date of receipt of Buyer's notice within which to cause to be delivered to Buyer such confirmation. If written confirmation is not delivered to Buyer as required above, Buyer may terminate this contract and the earnest money will be refunded to Buyer. Seller's obligations under this paragraph are independent of any other obligations of Seller under this contract.

**15. DEFAULT:** If Buyer fails to comply with this contract, Buyer will be in default, and Seller may (a) enforce specific performance, seek such other relief as may be provided by law, or both, or (b) terminate this contract and receive the earnest money as liquidated damages, thereby releasing both parties from this contract. If Seller fails to comply with this contract for any other reason, Seller will be in default and Buyer may (a) enforce specific performance, seek such other relief as may be provided by law, or both, or (b) terminate this contract and receive the earnest money, thereby releasing both parties from this contract.

**16. MEDIATION:** It is the policy of the State of Texas to encourage resolution of disputes through alternative dispute resolution procedures such as mediation. Any dispute between Seller and Buyer related to this contract which is not resolved through informal discussion will be submitted to a mutually acceptable mediation service or provider. The parties to the mediation shall bear the mediation costs equally. This paragraph does not preclude a party from seeking equitable relief from a court of competent jurisdiction.

**17. ATTORNEY'S FEES:** A Buyer, Seller, Listing Broker, Other Broker, or Escrow Agent who prevails in any legal proceeding related to this contract is entitled to recover reasonable attorney's fees and all costs of such proceeding.

**18. ESCROW:**
A. ESCROW: The Escrow Agent is not (i) a party to this contract and does not have liability for the performance or nonperformance of any party to this contract, (ii) liable for interest on the earnest money and (iii) liable for the loss of any earnest money caused by the failure of any financial institution in which the earnest money has been deposited unless the financial institution is acting as Escrow Agent. Escrow Agent may require any disbursement made in connection with this contract to be conditioned on Escrow Agent's collection of good funds acceptable to Escrow Agent.

B. EXPENSES: At closing, the earnest money must be applied first to any cash down payment, then to Buyer's Expenses and any excess refunded to Buyer. If no closing occurs, Escrow Agent may: (i) require a written release of liability of the Escrow Agent from all parties before releasing any earnest money; and (ii) require payment of unpaid expenses incurred on behalf of a party. Escrow Agent may deduct authorized expenses from the earnest money payable to a party. "Authorized expenses" means expenses incurred by Escrow Agent on behalf of the party entitled to the earnest money that were authorized by this contract or that party.

C. DEMAND: Upon termination of this contract, either party or the Escrow Agent may send a release of earnest money to each party and the parties shall execute counterparts of the release and deliver same to the Escrow Agent. If either party fails to execute the release, either party may make a written demand to the Escrow Agent for the earnest money. If only one party makes written demand for the earnest money, Escrow Agent shall promptly provide a copy of the demand to the other party. If Escrow Agent does not receive written objection to the demand from the other party within 15 days, Escrow Agent may disburse the earnest money to the party making demand reduced by the amount of unpaid expenses incurred on behalf of the party receiving the earnest money and Escrow Agent may pay the same to the creditors. If Escrow Agent complies with the provisions of this paragraph, each party hereby releases Escrow Agent from all adverse claims related to the disbursal of the earnest money.

Initialed for identification by Buyer ___ and Seller ___

This copyright protected form was produced using Lone Wolf Real Estate Technologies | 231 Shearson Crescent #310, Cambridge, Ontario, Canada N1T 1J3. This form presented by Rosa E. Orozco | Hills and Views LLC | (512) 994-4618 | Rosyrealtor@live.com

TRANSACTIONS TXR 1605
TransactionDesk Edition

Contract Concerning    40   N Interstate 35 Highway   PA1    Austin    TX 78701   Page 7 of 10     11-04-2024

(Address of Property)

    D. **DAMAGES:** Any party who wrongfully fails or refuses to sign a release acceptable to the Escrow Agent within 7 days of receipt of the request will be liable to the other party for (i) damages; (ii) the earnest money; (iii) reasonable attorney's fees; and (iv) all costs of suit.

    E. NOTICES: Escrow Agent's notices will be effective when sent in compliance with Paragraph 21. Notice of objection to the demand will be deemed effective upon receipt by Escrow Agent.

**19. REPRESENTATIONS:** All covenants, representations and warranties in this contract survive closing. If any representation of Seller in this contract is untrue on the Closing Date, Seller will be in default. Unless expressly prohibited by written agreement, Seller may continue to show the Property and receive, negotiate and accept back up offers.

**20. FEDERAL REQUIREMENTS:** If Seller is a "foreign person," as defined by Internal Revenue Code and its regulations, or if Seller fails to deliver an affidavit or a certificate of non-foreign status to Buyer that Seller is not a "foreign person," then Buyer shall withhold from the sales proceeds an amount sufficient to comply with applicable tax law and deliver the same to the Internal Revenue Service together with appropriate tax forms. Internal Revenue Service regulations require filing written reports if currency in excess of specified amounts is received in the transaction.

**21. NOTICES:** All notices from one party to the other must be in writing and are effective when mailed to, hand-delivered at, or transmitted by fax or electronic transmission as follows:

**To Buyer at:** _____    **To Seller at:** _____

_____        _____

Phone: _____    Phone: _____

E-mail/Fax: _____    E-mail/Fax: _____

E-mail/Fax:   anguti.3@gmail.com    E-mail/Fax: _____

With a copy to Buyer's agent at:      With a copy to Seller's agent at:

    Rosyrealtor@live.com _____

**22. AGREEMENT OF PARTIES:** This contract contains the entire agreement of the parties and cannot be changed except by their written agreement. Addenda which are a part of this contract are (check all applicable boxes):

- [x] Third Party Financing Addendum
- [ ] Loan Assumption Addendum
- [ ] Buyer's Temporary Residential Lease
- [ ] Seller's Temporary Residential Lease
- [ ] Addendum for Sale of Other Property by Buyer
- [ ] Addendum for "Back-Up" Contract
- [ ] Seller Financing Addendum
- [ ] Addendum for Coastal Area Property
- [ ] Short Sale Addendum
- [ ] Addendum for Seller's Disclosure of Information on Lead-based Paint and Lead-based Paint Hazards as Required by Federal Law
- [ ] Addendum for Authorizing Hydrostatic Testing
- [ ] Addendum Concerning Right to Terminate Due to Lender's Appraisal

- [ ] Environmental Assessment, Threatened or Endangered Species and Wetlands Addendum
- [ ] Addendum for Property Located Seaward of the Gulf Intracoastal Waterway
- [ ] Addendum for Release of Liability on Assumption of FHA, VA, or Conventional Loan Restoration of Seller's Entitlement for VA Guaranteed Loan
- [ ] Addendum for Property in a Propane Gas System Service Area
- [ ] Addendum Regarding Residential Leases
- [ ] Addendum Regarding Fixture Leases
- [ ] Addendum containing Notice of Obligation to Pay Improvement District Assessment
- [ ] Addendum for Section 1031 Exchange
- [x] Other (list):
  Non Realty Items Addendum

Initialed for identification by Buyer _____ and Seller _____     TREC NO. 30-17

This copyright protected form was produced using Lone Wolf Real Estate Technologies
Crescent #310, Cambridge, Ontario, Canada N1T 1J3. This form presented by Rosa E. Orozco | Hills and
Views LLC | (512) 994-4618 | Rosyrealtor@live.com |

TRANSACTIONS TXR 1605
TransactionDesk Edition

Authentisign ID: E55AF2DF-EDF-B36F9B7A-22CE-7BAA-AB09-D8437C6D4A0

Contract Concerning ___40__ N Interstate 35 Highway__ PA1___ Austin___ TX 78701_ Page 8 of 10             11-04-2024
(Address of Property)

**23. CONSULT AN ATTORNEY BEFORE SIGNING:** TREC rules prohibit real estate brokers and sales agents from giving legal advice. READ THIS CONTRACT CAREFULLY.

Buyer's
Attorney is:  No Counseling at the time of offer          Seller's
                                                          Attorney is: _____

_____                      _____

Phone: _____              Phone: _____

Fax: _____                Fax: _____

E-mail: _____             E-mail: _____

EXECUTED the _____ day of _____04/18/2025_____, 20_____ (Effective Date).
(BROKER: FILL IN THE DATE OF FINAL ACCEPTANCE.)

*Angelica Gutierrez Castaño*        04/17/2025      *William G. Wendlandt*        4/17/2025
Buyer Angelica Gutierrez Castaño                    Seller William G Wendlandt

_____                      _____
Buyer                                          Seller

The form of this contract has been approved by the Texas Real Estate Commission. TREC forms are intended for use only by trained real estate license holders. No representation is made as to the legal validity or adequacy of any provision in any specific transactions. It is not intended for complex trans-actions. Texas Real Estate Commission, P.O. Box 12188, Austin, TX 78711-2188, (512) 936-3000 (http://www.trec.texas.gov) TREC NO. 30-17. This form replaces TREC NO. 30-16.



TREC NO. 30-17

Contract Concerning    40   N Interstate 35 Highway   PA1    Austin     TX   78701    Page 9 of 10      11-04-2024

(Address of Property)

---

## BROKER INFORMATION
### (Print name(s) only. Do not sign)

| | | | | |
|---|---|---|---|---|
| Hills and Views LLC | 9002972 | | Urbanspace | 9001694 |
| Other Broker Firm | License No. | | Listing Broker Firm | License No. |

represents   ☒ Buyer only as Buyer's agent      represents   ☐ Seller and Buyer as an intermediary

     ☐ Seller as Listing Broker's subagent            ☒ Seller only as Seller's agent

| | | | | |
|---|---|---|---|---|
| Rosa E. Orozco | 595744 | | Doug Berkeley Harrison | 0362333 |
| Associate's Name | License No. | | Listing Associate's Name | License No. |

| | |
|---|---|
| Team Name | Team Name |

| | | | | |
|---|---|---|---|---|
| Rosyrealtor@live.com | (512) 994-4618 | | Doug@urbanspacerealtors.com | (512) 694-1551 |
| Associate's Email Address | Phone | | Listing Associate's Email Address | Phone |

| | | | |
|---|---|---|---|
| Licensed Supervisor of Associate | License No. | Licensed Supervisor of Listing Associate | License No. |

| | | | | |
|---|---|---|---|---|
| 11801 DOMAIN BLVD | (512) 994-4618 | | 301 West Ave #100 | (512) 457-8884 |
| Other Broker's Address | Phone | | Listing Broker's Office Address | Phone |

| | | | | | |
|---|---|---|---|---|---|
| AUSTIN | TX | 78758 | Austin | TX | 78701 |
| City | State | Zip | City | State | Zip |

| | |
|---|---|
| | Selling Associate's Name      License No. |
| | Team Name |
| | Selling Associate's Email Address      Phone |
| | Licensed Supervisor of Selling Associate      License No. |
| | Selling Associate's Office Address |
| | City      State      Zip |

Disclosure: Pursuant to a previous, separate agreement, Listing Broker has agreed to pay Other Broker a fee (☐ $_____ or ☒ __3__% of the Sales Price). This disclosure is for informational purposes and does not change the previous agreement between brokers to pay or share a commission.

This copyright protected form was produced using Lone Wolf Real Estate Technologies - 231 Shearson Crescent #310, Cambridge, Ontario, Canada N1T 1J3. This form presented by Rosa E. Orozco | Hills and Views LLC | (512) 994-4618 | Rosyrealtor@live.com |

TRANSACTIONS
TransactionDesk Edition

TREC NO. 30-17
TXR 1605

Authorsign Estator2e id: P20F9B7A 12CE 4BAA A509 D9437C6B41A0

Contract Concerning___40___N Interstate 35 Highway___PA1___Austin___TX  78701  Page  10 of 10          11-04-2024
(Address of Property)

## OPTION FEE RECEIPT

Receipt of $ _____ (Option Fee) in the form of _____
is acknowledged.

_____     _____
Escrow Agent                                                                                                          Date

## EARNEST MONEY RECEIPT

Receipt of  $ _____ Earnest Money in the form of _____
is acknowledged.

_____     _____     _____     _____
Escrow Agent  Heritage Title Compay - Mindy Hallford     Received by          Email Address                          Date/Time

_____     _____
Address                                                                                                          Phone

_____     _____     _____     _____
City                                                       State                          Zip                                                       Fax

## CONTRACT RECEIPT

Receipt of the Contract is acknowledged.

_____     _____     _____     _____
Escrow Agent                                         Received by          Email Address                          Date

_____     _____
Address                                                                                                          Phone

_____     _____     _____     _____
City                                                       State                          Zip                                                       Fax

## ADDITIONAL EARNEST MONEY RECEIPT

Receipt of  $ _____ additional Earnest Money in the form of _____
is acknowledged.

_____     _____     _____     _____
Escrow Agent                                         Received by          Email Address                          Date/Time

_____     _____
Address                                                                                                          Phone

_____     _____     _____     _____
City                                                       State                          Zip                                                       Fax

This copyright protected form was produced using Lone Wolf Real Estate Technologies - 231 Shearson
Crescent #310, Cambridge, Ontario, Canada N1T 1J3. This form presented by Rosa E. Orozco | Hills and
Views LLC | (512) 994-4618 | Rosyrealtor@live.com |

TREC NO. 30-17
TXR 1605

# EXHIBIT 4

# EXHIBIT 4

## IN THE UNITED STATES BANKRUPTCY COURT
## FOR THE WESTERN DISTRICT OF TEXAS
## AUSTIN DIVISION

| | | |
|---|---|---|
| **In re:** | § | **Chapter 11** |
| | § | |
| **WILLIAM G. WENDLANDT** | § | |
| | § | **Case No. 25-10657** |
| **Debtor** | § | |

### DECLARATION UNDER PENALTY OF PERJURY OF DOUGLAS HARRISON

| | |
|---|---|
| **THE STATE OF TEXAS** | § |
| **COUNTY OF TRAVIS** | § |

I, Douglas Harrison declare as follows:

"I am a real estate agent for Urbanspace, LLP.  I routinely list and sell real estate property and assets in Travis County, Texas and the surrounding areas.

I maintain offices at 301 West Ave, Suite 100, Austin, Texas 78701.

To the best of my knowledge, neither I or Urbanspace, LLP (hereafter, together, referred to as the "Real Estate Broker")  have or represent any interest adverse to the Debtor or its estate, or have any connections with the Debtor, the creditors, or any other party-in-interest, their respective attorneys, the United States Trustee, or any person employed in the office of the United States Trustee, except: None.

Debtor did not owe any money to the Real Estate Broker as of the bankruptcy filing date. However, Debtor had endorsed, prior to the bankruptcy filing date, an agreement (the "Listing Agreement") to pay a real estate fee to the Real Estate Broker when the Debtor sells the Property (hereafter described) if and whenever to a purchaser represented directly or indirectly by the Real Estate Broker.

I am prepared to provide testimony as to the sale price and terms of the property located at 40 N. IH 35, PA 1, Austin, Texas (the "Property") which the Real Estate Broker was retained to sell.  In connection with these services, the Real Estate Broker  shall be compensated according to the Listing Agreement between the Real Estate Broker and Debtor attached as Exhibit "A." Specifically, upon the date that Debtor (including for all purposes his US Bankruptcy Estate

and/or the applicable United States Trustee, if applicable) sells the Property; a real estate fee in the amount of six percent (6%) multiplied by the purchase price  paid by said purchaser shall be contractually and unconditionally owed to the Real Estate Broker.  For example, if the purchase price paid by said purchaser for the Property is $1,850,000 (one million eight hundred and fifty thousand dollars); then the real estate fee owed to the Real Estate Broker (including any co-listing broker or brokers, if any) is agreed to be $111,000 (one hundred and eleven thousand dollars).

I declare under penalty of perjury under the laws of the State of Texas and the United States of America that the foregoing is true and correct."

Executed May 8, 2025.

Douglas Harrison