IN THE UNITED STATES BANKRUPTCY COURT
FOR THE WESTERN DISTRICT OF TEXAS
AUSTIN DIVISION

| | | |
|---|---|---|
| In re: | § § | Chapter 11 |
| WILLIAM G. WENDLANDT | § § | Case No. 25-51147 |
| 120-MP VICTORIA, LTD. | § § | Case No. 25-51373 |
| LAURENT TOWER, LLC | § § | Case No. 25-51372 |
| 1309 RED RIVER DEVELOPMENT COMPANY, LLC | § § § | Case No. 25-51371 |
| 120 SOUTH MAIN PARKING LLC | § § § | Case No. 25-51373 |
| | § § | Jointly Administered under Case No. 25-51147 |

**JOINT APPLICATION TO EMPLOY JOE GONZALEZ AND LENDING STRATEGY ADVISERS, LLC AS FINANCE CONSULTANT TO THE DEBTORS**

\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*

**THIS APPLICATION REQUESTS RELIEF THAT MAY BE ADVERSE TO YOUR INTERESTS. IF NO TIMELY RESPONSE IS FILED WITHIN 21 DAYS FROM THE DATE OF SERVICE, THE RELIEF REQUESTED HEREIN MAY BE GRANTED WITHOUT A HEARING BEING HELD. A TIMELY FILED RESPONSE IS NECESSARY FOR A HEARING TO BE HELD. ANY RESPONSE MUST BE TIMELY FILED WITH THE UNITED STATES BANKRUPTCY CLERK, WESTERN DISTRICT OF TEXAS, 615 E. HOUSTON ST., ROOM 597, SAN ANTONIO, TEXAS 78205903 SAN JACINTO BLVD., SUITE 322, AUSTIN, TX 78701. IF A TIMELY RESPONSE IS FILED, THE COURT WILL THEN SET A HEARING ON THE MOTION, AND YOU WILL BE PROVIDED WITH NOTICE OF THE DATE, TIME, AND PLACE OF THE HEARING. IF YOU DO NOT ATTEND THE HEARING, THE COURT MAY DECIDE THAT YOU DO NOT OPPOSE THE MOTION.**
\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*

William G. Wendlandt ("Wendlandt"); 120-MP VICTORIA, Ltd. ("Victoria"); Laurent Tower, LLC ("Laurent"); 1309 Red River Development Company, LLC ("Red River"); and 120 South Main Parking LLC ("South Main"), the Debtors-in-possession in the above referenced Chapter 11 case (the "Case"), by and through its undersigned proposed attorneys, hereby files this

1

*Joint Application to Employ Joe Gonzalez and Lending Strategy Advisors, LLC as the Finance Consultant to the Debtors* (the "Application"). In support of the Application, the Debtors rely upon the Declaration of Joe Gonzalez (the "Gonzalez Declaration") attached hereto as Exhibit A. The debtor presents the Application and respectfully represents the following:

**JURISDICTION, VENUE, AND BACKGROUND**

1. This Court has jurisdiction to consider the Application pursuant to 28 U.S.C. §§ 157 and 1334. This is a core proceeding pursuant to 28 U.S.C. § 157(b)(2). Venue is proper before this Court pursuant to 28 U.S.C. §§ 1408 and 1409.

2. The statutory predicates for the relief requested herein are Sections 105(a), 363(b), 327 and 330 of the Bankruptcy Code, Rule 2014 of the Federal Rules of Bankruptcy Procedure and Local Rule 2014 of the Local Rules of Bankruptcy Procedure for the Western District of Texas.

3. On May 5, 2025 (the "Petition Date"), the Debtors filed voluntary petitions for relief under Chapter 11 of title 11 of the United States Code, 11 U.S.C. §§ 101-1330 (as amended, the "Code").

4. Debtors continue to manage and operate their businesses as debtors-in-possession pursuant to §§ 1107 and 1108 of the Bankruptcy Code. No trustee or examiner has been appointed.

5. Attached hereto is the proposed order on the Application.

6. Prior to the bankruptcy filings, Debtors engaged Joe Gonzalez ("Mr. Gonzalez") and Lending Strategy Advisers, LLC, as finance consultants. Prior to the bankruptcy filing, Mr. Gonzalez was close to helping Debtors refinance their debt with First State Bank, Louise when several judgements surfaced while in title. Mr. Gonzalez has continued to pursue financing for the Debtors both with conventional and non conventional lenders.

2

7. As Debtors rebuild in these bankruptcy cases, they will need expert financing advice to help navigate the restructuring waters. Debtors have been working with Mr. Gonzalez and believe he is well suited to provide such finance advice.

**RELIEF REQUESTED**

8. By this Application, pursuant to sections §§ 363(b), 327(a) and 328 of the Bankruptcy Code and Rule 2014 of the Federal Rules of Bankruptcy Procedure, Debtors seek to employ Mr. Gonzalez as Finance Consultant to the Debtors in the above-referenced Chapter 11 Cases. The contact information for Mr. Gonzalez is:

>Attn: Joe Gonzalez
>Lending Strategy Advisers
>111 W. Sunset,
>San Antonio, Texas 78209
>joe@thelsallc.com

9. Mr. Gonzalez is well suited to be the Finance Consultant to the Debtors, which will enable the Debtors to effectively and fully execute duties as debtors-in-possession. The Debtors believe that Mr. Gonzalez is well qualified to provide advice to the Debtors on financing issues involved in the Chapter 11 Cases based on his experience and capabilities.

10. The Debtors presently contemplate that the professional services to be provided to the Debtors and the estate by Mr. Gonzalez will include, without limitation, assisting the Debtors obtain funding to restructure their debt with First State Bank of Louise.

11. It is necessary that the Debtors employ a Finance Consultant to render the foregoing professional services.

12. Mr. Gonzalez has stated his desire and willingness to act as Finance Consultant and render the necessary professional services.

**CONNECTIONS AND LACK OF CONFLICTS**

A. **CONNECTIONS WITH THE DEBTORS**

13. In preparation of this Application, the Debtors reviewed the Gonzalez Declaration. Based on this information, the Debtors are unaware of any circumstances where Mr. Gonzalez has a current connection with the Debtors that would disqualify Mr. Gonzalez from providing finance consulting services to the Debtors in the Cases. To the best of the Debtors' knowledge and belief, Mr. Gonzalez has no relationship that presently causes a disqualification, an actual conflict of interest, or otherwise renders Mr. Gonzalez ineligible to serve as Finance Consultant to the Debtors. Accordingly, the Debtors believe Mr. Gonzalez's engagement to provide finance consulting services to the Debtors in these Cases is permissible under the Bankruptcy Code and is in the best interest of the estates and all parties in interest.

B. **CONNECTIONS WITH CREDITORS AND OTHER PARTIES IN INTEREST**

14. Based on the information contained in the Gonzalez Declaration, the Debtors are unaware of any circumstances where Mr. Gonzalez has a connection with the Debtors' creditors and/or other parties in interest in these Cases that would disqualify Mr. Gonzalez from providing finance consulting services to the Debtors in these Cases.

15. Mr. Gonzalez will conduct an ongoing review of his files to assure that no actual conflict or other disqualifying circumstances exist. If any new facts or relationships are discovered, Mr. Gonzalez will supplement the Gonzalez Declaration accordingly.

16. Mr. Gonzalez providing finance consulting services to the Debtors in these cases does not hold or represent an interest adverse to the estates and Mr. Gonzalez is a disinterested person under 11 U.S.C. § 101(14).

**COMPENSATION TERMS**

17. Mr. Gonzalez has agreed to provide the finance consulting services as described herein.

For this matter, the finance consulting services going forward will be provided by Joe Gonzalez, Managing Director, at a flat fee rate of $7500 paid upon Debtors' obtaining financing to refinance or pay down the First State Bank Louise debt.

18. In addition to the foregoing fees, the Debtors will also reimburse Mr. Gonzalez for reasonable out-of-pocket expenses. The expenses charged to the Debtors may include, among other things, photocopying, courier fees, postage, travel expenses and such other out-of-pocket costs that may be reasonably necessary in the rendition of financial consulting services. Mr. Gonzalez will charge the estates for expenses in a manner and at rates consistent with charges made generally to Mr. Gonzalez's other clients and consistent with the applicable Bankruptcy Local Rules and United States Trustee guidelines.

19. Payments to Mr. Gonzalez shall be subject to the terms, conditions, and limitations regarding such compensation set forth in the Debtors' cash collateral order and approved cash collateral budgets or as otherwise provided by order of the Court or a confirmed plan.

20. Mr. Gonzalez's compliance with the requirements of §§ 327, 328, 330, and 504 of the Bankruptcy Code, and Bankruptcy Rule 2014 are set forth in detail in the Gonzalez Declaration.

21. No previous application for the relief sought herein has been made to this or any other court. The Debtors have not sought to employ any other strategy advisor for representation in these Cases.

WHEREFORE, the Debtors respectfully request that the Court enter an Order approving the Application to Employ Joe Gonzalez and Lending Strategy Advisors, LLC as the Finance Consultant to Debtor, authorizing the employment, effective as of May 5, 2025, as set forth above and granting such other relief as is just and proper.

Dated: June 3, 2025

        Respectfully Submitted,

        THE SMEBERG LAW FIRM, PLLC

        By:   /s/ *Ronald J. Smeberg*

        RONALD J. SMEBERG
        State Bar No. 24033967
        4 Imperial Oaks
        San Antonio, TX 78248
        210-695-6684 (Tel)
        210-598-7357 (Fax)
        ron@smeberg.com
        PROPOSED ATTORNEY FOR DEBTOR

<u>IN THE UNITED STATES BANKRUPTCY COURT
FOR THE WESTERN DISTRICT OF TEXAS
AUSTIN DIVISION</u>

| | | |
|---|---|---|
| **In re:** | § | **Chapter 11** |
| | § | |
| **WILLIAM G. WENDLANDT** | § | **Case No. 25-51147** |
| | § | |
| **120-MP VICTORIA, LTD.** | § | **Case No. 25-51373** |
| | § | |
| **LAURENT TOWER, LLC** | § | **Case No. 25-51372** |
| | § | |
| **1309 RED RIVER DEVELOPMENT** | § | |
| **COMPANY, LLC** | § | **Case No. 25-51371** |
| | § | |
| **120 SOUTH MAIN PARKING LLC** | § | **Case No. 25-51373** |
| | § | |
| | § | **Jointly Administered under Case** |
| | § | **No. 25-51147** |

**<u>DECLARATION OF JOE GONZALEZ IN SUPPORT OF JOINT APPLICATION
TO EMPLOY JOE GONZALEZ AND LENDING STRATEGY ADVISERS, LLC AS
FINANCE CONSULTANT FOR THE DEBTORS</u>**

I, **JOE GONZALEZ.**, declare:

"I am the Principal of Lending Strategy Advisers, LLC, (the "Firm"), proposed Firm to provide finance consulting services on behalf of William G. Wendlandt; 120-MP Victoria, Ltd.; Laurent Tower, LLC; 1309 Red River Development Company, LLC; and 120 South Main Parking LLC ("Debtors"), the debtors in the above captioned cases (the "Cases"). I am submitting this declaration (the "Declaration") in support of the Joint Application to Employ Joe Gonzalez and Lending Strategy Advisors, LLC an as Finance Consultant to the Debtors (the "Application").

**I.      <u>BACKGROUND</u>**

1.      I am a subject matter expert at financing and have worked 33 years on the lending side of banking. Throughout my career, I have overseen over a billion dollars in mortgage funding

2. I maintain offices at 111 W. Sunset, San Antonio, Texas 78209. My telephone number is (210) 389-7725 and email address is joe@thelsallc.com.

3. The Debtors have proposed to retain the Firm to provide Finance Consulting services pursuant to the Engagement Letter attached hereto as Exhibit A. The Firm will provide the following services for the Debtors:

    a. assist CLIENT with identifying and coordinating financing strategies and resources to refinance the Debtors; secured debt; and

    b. Other services as may be agreed upon between Firm and Client.

## II. CONNECTIONS WITH DEBTORS, CREDITORS AND PARTIES IN INTEREST

4. In preparing this Declaration, I performed a review of the connections and relationships between the Firm, Debtors, creditors of Debtors, and other parties in interest based upon the information supplied to me by the Debtors. Neither I, nor the Firm hold or provide any current services to any entity holding any interest adverse to the Debtors, or its estates as required by 11 U.S.C. § 327(a). Other than the Firm's retention prior to the bankruptcy filing, the Firm has no known connections or relationships with the Debtors, the Debtors' creditors, any other party in interest and their respective attorneys and accountants, the United States Trustee or any person employed in the office of the United States Trustee.

5. I provide Finance Consulting services in cases, proceedings, and out-of-court negotiations and mediations involving many different attorneys and non-attorney professionals, some of which may now or in the future represent creditors or Parties-in-Interest in this case.

6. To the extent that I become aware of any other relationships or connections, I will promptly file a supplemental declaration disclosing any other relationships or connections.

7. I am unaware of any circumstances where the Firm has a connection with the Debtors in the Cases that would disqualify the Firm from providing Finance Consulting services to the Debtors in the Cases. I submit that the Firm's retention by the Debtors is permissible under the Bankruptcy Code and is in the best interest of all parties in interest.

8. Except for the proposed engagement with the Debtors, neither I nor the Firm have provided Finance Consulting services or will provide Finance Consulting services to any other entity in connection with the Cases, and neither I nor the Firm will accept any fee from any other party or parties in interest in the case related to the Cases. As a condition to acceptance of the employment as Finance Consultant to the Debtors, the Firm has not and will not undertake to provide Finance Consulting services to any creditor of Debtors in any matter related to the Cases. The Firm is a "disinterested person" as that term is defined in section 101(14) of the Bankruptcy Code in that the Firm and its employees:

    a. are not creditors, equity security holders, or insiders of the Debtors;

    b. are not and were not, within two (2) years before the date of the filing of Debtors' petition, a director, officer or employee of Debtors; and

    c. do not have an interest materially adverse to the interest of the Estates or of any class of creditors or equity security holders, by reason of any direct or indirect relationship to, connection with, or interest in, Debtors.

### III. COMPENSATION TERMS

9. Prior to the Debtors' bankruptcy case filing, I received an earned retainer of $25,500 to assist Debtors with coordinating financial documentation with banks and others as needed. Since that time I have been diligently working with Debtors and various lenders to reach Debtors' goals

3

10. Subject to Court approval and in accordance with sections 327 and 330(a) of the Bankruptcy Code, future compensation will be payable to the Firm upon our obtaining financing for the Debtors that is approved by the Court. The fee upon obtaining approved financing is $7500.

11. The compensation structure stated herein is at or below the Firm's typical rates for work of this nature. From time to time, other employees of the Firm may serve the Debtors in connection with the matters for which the Firm will be retained.

### IV. CONCLUSION

12. In view of the foregoing, I believe that the Firm (i) does not hold an interest adverse to the Debtors or its Estates in connection with the Cases, (ii) does not provide strategic advisory services to any other party in connection with the Cases, and (iii) is a "disinterested person" as that term is defined under section 101(4) of the Bankruptcy Code. The Firm recognizes, and takes very seriously, its continuing responsibility to be aware of and to further disclose any relationship or connection between it and other parties in interest in connection with Debtors' Cases as it appears or becomes recognized during the Cases. Accordingly, we reserve the right to, and shall, supplement this disclosure if necessary if more information becomes available to us reflecting further connections with parties in interest. The foregoing constitutes the statement of the Firm pursuant to sections 327 and 328 of the Bankruptcy Code, Rules 2014(a) and 2016 of the Federal Rules of Bankruptcy Procedure, and Local Rule 2014.

I declare under penalty of perjury that the foregoing is true and correct.

FURTHER AFFIANT SAYETH NOT.

_____
JOE GONZALEZ

## EXHIBIT A

## JOE GONZALEZ'S CONNECTIONS TO PARTIES-IN-INTEREST

Joe Gonzalez does not have any connections with the Debtors, any of the Debtors' known creditors, any other parties in interest in the Case, their respective attorneys, the United States Trustee, or any person employed in the Office of the United States Trustee except as follows:

a. None.



# LENDING STRATEGY ADVISERS

Lending Strategy Advisers, LLC

111 W Sunset Rd

San Antonio, Texas 78209

210.445.3715

## CONSULTING SERVICES AGREEMENT

This is an Agreement dated **February 3, 2025,** (the "<u>Agreement</u>") for professional services between Lending Strategy Advisers, LLC, a Texas limited liability company (hereinafter "<u>LSA</u>") and William Wendlandt, and Laurent Tower, LLc,12-MD Victoria, LTD, 1390 Red River Development, LLC and or assigns.

1. **TERM.** The term of this Agreement shall commence on or before date agreement is executed and initial deposit paid. Agreement shall terminate upon the expiration of 60 days thereafter, or as may be earlier terminated as provided in Section 4.

    a) **SCOPE OF SERVICES**. LSA will assist CLIENT with identifying and coordinating financing strategies and resources to the extent that could include multiple banking relationships for above referenced properties and entities, such financing may consist of a total of $6, 300,000. At the time of this agreement there is a current loan maturing which may have to be broken into 3 separate loans. Target loan requests are fluid at this time. The request will require coordination between several parties to secure financing approval with bank. It may also be in the scope that there may need to be several banks who become engaged. Client will facilitate with all previously provided documentation that may be accessible to client and LSA to expedite request. LSA will use current loan request template to begin request as soon as possible.

2. This engagement shall include such services that may involve ancillary resources such as legal and real estate introduction and coordination. Such services shall not include vetting out potential real estate leasing services. LSA agrees that the services will be conducted in a timely and professional manner in accordance with industry standards and in good faith. LSA further agrees to devote the number of hours to the Services that are reasonably necessary to fulfill the spirit and purpose of this Agreement. LSA shall regularly communicate and coordinate with CLIENT about its activities under this Agreement and shall notify CLIENT when contacting any lending, real estate, or other potential business partner or otherwise acting on behalf of CLIENT. LSA's contact for CLIENT shall be **William Wendlandt** who shall be authorized to direct LSA' work.

1

3. **COMPENSATION.** CLIENT agrees to pay LSA for services as follows:

    The initial engagement fee shall be $25,500 to assist clients with coordinating financial documentation with banks and others as needed. Initial Fee is earned when Engagement Agreement is executed and will be billed withing 24 hours of signature and acceptance. In addition to initial fee, Client agrees to pay or cause to have paid, $7,500 in the event commitment is secured for financing.

    Such additional payout shall be considered as a "commitment fee" and shall not be considered in any way a commission for the purposes of this EA. The initial fee shall be due as of the date of this Agreement for providing the Services during the Term. LSA shall keep appropriate documentation and a record of any expenditures made in support of this Agreement in compliance with CLIENT's accounting procedures and agrees to fully comply with all CLIENT's rules and policies regarding reimbursement of approved expenses, if any. LSA shall submit monthly invoices to CLIENT for all pre-approved reasonable and necessary business expenses incurred by it on behalf of CLIENT, and CLIENT shall pay invoices within fifteen (15) days of receipt.

4. **TERMINATION.** Notwithstanding any other provisions of this Agreement, this agreement can be terminated upon sixty (60) days' notice by either party.

5. **CONFIDENTIALITY.** LSA agrees to maintain strict confidence of all information disclosed to it by or concerning CLIENT. Such confidential and proprietary information will be used by LSA solely in connection with the performance of Services under this Agreement. LSA shall not deliver any messages to the marketplace or communicate any information on behalf of CLIENT without the prior approval of CLIENT. LSA recognizes that any breach of this provision could cause irreparable harm to CLIENT and agrees that CLIENT shall have the right to seek injunctive relief for any breach or attempted breach of this section.

6. **CONFLICT OF INTEREST.** LSA will familiarize itself and comply with any applicable conflict of interest statues and regulations affecting its representation of CLIENT. The legal relationship between LSA and CLIENT will terminate at the end of the term of this Agreement.

7. **COMPLIANCE WITH APPLICABLE LAWS.** LSA shall comply with all laws applicable to LSA's activities on behalf of CLIENT. LSA is aware that the federal government, states, and certain local jurisdictions have laws and regulations relating to lending, borrowing and certain aspects of real estate transactions and LSA shall become familiar and comply with any and all such applicable laws and regulations.

8. **ASSIGNMENT OF ALL INTELLECTUAL PROPERTY RIGHTS.**

    a) LSA agrees that CLIENT will own all right, title, and interest in and to all works created in connection with the Services hereunder by LSA (the "Works"), including any and all intellectual property rights in the Works. LSA acknowledges that all Works shall be considered "works made for hire." To the extent that any of the Works are not deemed works made for hire, for whatever reason, LSA hereby assigns, and agrees to assign, to CLIENT all right, title, and interest in and to the Works, including all intellectual property rights in the Works. The foregoing intellectual property rights include, but are not limited to, (i) all rights to register, or to renew any registrations for, such intellectual property rights and (ii) all causes

of action related to such intellectual property rights, whether such causes of action are pre-existing or arise in the future.

b) LSA will execute and deliver any and all further documents that CLIENT reasonably determines may be desirable to perfect CLIENT's ownership of the Works, including any intellectual property rights in any of the Works. LSA will not attempt to register any materials provided by LSA pursuant to this Agreement at the U.S. Copyright Office, the U.S. Patent and Trademark Office, or in any foreign counterparts of those offices.

9. **INDEMNIFICATION.** In return for the foregoing and other good and valuable consideration, the receipt and sufficiency of which is hereby acknowledged, in the event LSA enters into any contract or assumes any obligation on behalf of CLIENT, CLIENT agrees to indemnify and defend LSA against any and all third party claims that may arise from that contract or obligation. The foregoing defense and indemnity obligations are subject to LSA providing CLIENT with prompt written notice and sole control of any claim, demand, action or suit for which defense and/or indemnification are sought, and LSA's reasonable cooperation. LSA, may at its own expense, associate in the defense of any such third-party action.

10. **LIMITATION OF LIABILITY.** Each party's liability (whether in contract, tort, negligence, strict liability, by statute, or otherwise) to the other party or to any third party concerning performance or non-performance or otherwise related to this Agreement shall in the aggregate be limited to direct damages not to exceed the fees received by LSA under this Agreement for the portion of the services giving rise to such claim. NOTWITHSTANDING THE FOREGOING, IN NO EVENT SHALL EITHER PARTY BE LIABLE FOR CONSEQUENTIAL, INCIDENTAL, PUNITIVE, SPECIAL, EXEMPLARY OR INDIRECT DAMAGES OR EXPENSES (INCLUDING, WITHOUT LIMITATION, LOST PROFITS OR OTHER ECONOMIC LOSS, LOST REIMBURSEMENTS, LOST DATA, OR LOST SAVINGS), EVEN IF SUCH PARTY WAS ADVISED OF THE POSSIBILITY OF THE OCCURRENCE OF SUCH DAMAGES.

11. **NOTICES.** All notices from one party to the other shall be in writing and shall be given by addressing the same to the other party at the address or facsimile number set forth below, or at such other address or facsimile number as either may specify in writing to the other. All notices shall become effective five (5) days after being deposited in the United States mail with proper postage for first class Registered or Certified Mail prepaid, return receipt requested, or upon receipt if sent by overnight or commercial courier or when delivered personally.

   If to LSA:	Joe A Gonzalez
   		CEO
   		111 W Sunset Rd
   		San Antonio, Texas 78209
   		Office: 210 389 7725
   		Mobile: 210 445 3715

   If to CLIENT:	Laurent Tower, LLc,12-MD Victoria, LTD,
   		1390 Red River Development, LLC

   		**William "Bill" Wendlandt and or assigns**

12. **INDEPENDENT CONTRACTOR.** LSA and CLIENT agree that this Agreement does not create an employment relationship between them and that LSA is and shall remain an independent contractor. LSA shall be responsible for all tax liabilities relating to all amounts paid to LSA under this Agreement.

13. **NO ASSIGNMENT; NO SUBCONTRACTING.** LSA shall not assign this Agreement or subcontract its rights or responsibilities under this Agreement, in whole or in part, without the prior written consent of CLIENT.

14. **SEVERABILITY.** If any term, provision, covenant, or condition of this Agreement or any application thereof, should be held by a court of competent jurisdiction to be invalid, void or unenforceable, by any rule of law or public policy, or otherwise, all provisions, covenants, and conditions of this Agreement not held invalid, void or unenforceable, shall continue in full force and effect and shall in no way be affected, impaired or invalidated thereby.

15. **MERGER CLAUSE; GOVERNING LAW.** This Agreement constitutes the entire agreement between the parties hereto and it may not be modified and no provision may be waived except by a subsequent written agreement between the parties hereto. This Agreement shall be governed by, and construed and enforced in accordance with, the laws of Texas (without giving effect to its conflicts of laws principles). If any legal action is necessary to enforce this Agreement, the parties agree that venue shall be in Bexar County, Texas. The parties also waive any objections they may have to venue in the defense of an inconvenient forum to the maintenance of such actions or proceedings to enforce this Agreement.

16. **SIGNATURE.** Signature of the parties or authorized representatives thereof shall constitute

acceptance of the terms of this Agreement. This Agreement may be executed in counterparts, each of which is deemed an original but all of which constitute one and the same instrument. The signature pages may be detached from each counterpart and combined into one instrument. This Agreement may be signed and delivered by electronic facsimile (fax or email) which shall be effective as an original.

17. **HEADINGS**: The headings and titles in this Agreement are for convenience only, and they shall not limit or otherwise affect the meaning of any terms in this Agreement or be used in the construction of any provision contained in the Agreement

**LSA:**

**LENDING STRATEGY ADVISERS, LLC**
**A Texas limited liability company**

By: _____     Date: _____
    Joe A. Gonzalez
    Chief Executive Officer


**CLIENT:**

Laurent Tower, LLC, 12-MD Victoria, LTD, 1390 Red River Development, LLC and or assigns.

By: _/s/ William Wendlandt_____     Date: _2-6-2023_
Name: _William Wendlandt_
Title: _____

5



# LENDING STRATEGY ADVISERS

Lending Strategy Advisers, LLC

111 W Sunset Rd

San Antonio, Texas 78209

210.445.3715

### AUTHORIZATION TO RELEASE INFORMATION

To Whom It May Concern:

1.  I/We have applied for or are in the process of applying for a mortgage loan. As part of the process to prepare for applying for a loan and during the application process itself, Joe A. Gonzalez of Lending Strategy Advisers, LLC ("**Adviser**") may obtain and verify information for use in the loan application process, either before or after I/We have applied for a mortgage loan.

2.  I/We authorize you to provide to Adviser any and all information and documentation that Adviser may request. Such information includes, but is not limited to, employment history and income; bank, money market, and similar account balances; credit history; and copies of income tax returns.

3.  Adviser may address this authorization to any party involved in the loan application process or disclosed by any consumer credit reporting agency or similar source.

4   A copy or this authorization may be accepted as an original.

5.  Your prompt reply to Adviser's requests for documents and information is appreciated.

Printed Name: _William Wendlandt_         Printed Name: _____

Date: _2-6-2025_                           Date: _____